## EX PARTE JOHN GREENHAW.

### No. 2113.    Decided November 29, 1899.

**1. Bail in Capital Cases—Right to—Agreement to Turn State's Evidence.**

Prosecuting attorneys have no right, under our statutes, to make an agreement with a defendant in a capital case that he shall be granted bail in consideration of his turning State's evidence.

**2. Same—Contract Is Continuous.**

A contract, by one of several indicted parties, to turn State's evidence, is continuous, and only consummated where there has been a final trial of the parties against whom he agrees to testify and has testified; and, if appeals are prosecuted, he is not entitled to release under the contract until there is an affirmance of the judgment on appeal.

**3. Same.**

Before testifying, the accomplice who has agreed to turn State's evidence has acquired no special privileges. He is not consequently entitled to have bail, and an agreement with him by the prosecuting attorney, that he shall have bail in a capital case, is ultra vires and not binding upon the State.

HENDERSON, Judge, concurring.—In this State the court alone is authorized to make or approve a contract with an accomplice as to his turning State's evidence. The contract must be in consideration that he shall testify fully and fairly with regard to the guilt of his associates in the particular case; his immunity being limited to that particular case. An accomplice is not entitled to bail pending the disposition of the case against his principal. There must have been a compliance with his contract by the accomplice before he can claim immunity. After he has fully complied with his contract, the court then, and not before, authorizes a dismissal or nolle prosequi of the case in so far as he is concerned.

APPEAL from the District Court of Henderson. Tried below before Hon. A. D. LIPSCOMB.

Appeal from an order and judgment refusing bail and remanding relator to custody in a capital case after hearing upon a writ of habeas corpus.

The case is sufficiently stated in the opinion below.

*John S. Jones* and *Eustace & McDonald*, for relator.

*N. B. Morris, Guy Green,* and *Rob't A. John,* Assistant Attorney-General, for respondent.

BROOKS, JUDGE.—Appellant was indicted for three several murders in Henderson County. He sued out an application for habeas corpus before the Hon. A. D. Lipscomb, judge of the District Court of said county, and upon the hearing thereof was remanded to the custody of the sheriff.

Appellant's first assignment of error is "that the court erred in refusing a reasonable bail to applicant, the evidence showing he is only held as a witness against his codefendants, and that he had been promised, under a valid contract with the proper officers of the State, immunity from prosecution and punishment for his connection with the crimes charged against him." The record shows that counsel

for the State and the appellant made the following agreement: "It is agreed by and between the applicant and the State, that the statement of facts shows 'that applicant is guilty of murder 'in the first degree, and that the proof is evident; and that the applicant is only entitled to bail, if at all, in the event that the Court of Criminal Appeals should see .proper to grant it, upon the contract (if any) as shown by said statement of facts, had with the State, granting the said applicant immunity from prosecution and punishment in consideration of his turning State's evidence. This agreement does not waive the error assigned in the second assignment of error presented by the record. And the matters contained in the applicant's assignments of error are the only ones that this court is to consider in reference to this appeal." And, in addition to said agreement, it appears that the applicant made an agreement with Hon. N. B. Morris, representing the State of Texas, which agreement was ratified and consented to by Jerry N. Crook, Esq., district attorney in and for the district of which said Henderson County is a part. It appears, in substance, that the defendant agreed to tell fully and truly all he knew about said killing, and to leave out no guilty person, and to implicate no innocent man; that thereupon the defendant made a statement inculpating all the parties under arrest, leaving out his brother. Subsequent to the making of said statement, he made an additional statement, in which he included his brother, Arthur Greenhaw, as one of the participants in the murder. N. B. Morris states "that he promised the applicant that, if he would tell all he knew about said murders, and testify fully and truly thereto, he should have immunity from punishment for his complicity therein, and at the proper time he should be given his liberty, and that, when the proper time arrived, he would not resist his application for bail; that he did not think he told applicant that he should have bail when it was safe for him to return to his home, nor was any time agreed on. The applicant states that one of the conditions on which he turned State's evidence was that he should be allowed bail, and he was led to believe that he would be granted bail as soon as the excitement incident to the hanging of the three Humphreys, for the murder of which applicant was indicted, together with the other parties, subsided in the neighborhood in which applicant lived, and as soon as it was personally safe for applicant to be at large." The applicant testified on the examining trial, and on the habeas corpus trial before the district judge, under the agreement made with the said Morris, and has ever been ready to so testify according to said agreement, and make a full, free, and correct statement of all the facts. Applicant's wife testified that on Monday before the habeas corpus trial she had a conversation with Messrs. Morris and Faulk. Morris told her two or three times that John (the applicant) would soon be a free man; that he was going to allow him bond; that applicant had told Morris about the mob, and that he would soon have his liberty; that applicant would soon have

bail. There are but two statutes in our Code of Criminal Procedure touching this matter. Article 37 provides: "The district or county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, which reasons shall be incorporated in the judgment of dismissal, and no case shall be dismissed without the permission of the presiding judge, who shall be satisfied that the reasons so stated are good and sufficient to authorize such dismissal." Article 630 provides: "The district or county attorney may, by permission of the court, dismiss a criminal action at any time upon complying with the requirements of article 37 of this Code."

It appears from the foregoing statement that there is nothing left for us to decide in this case, except the isolated proposition as to whether or not a party who is guilty of murder in the first degree, and the proof evident, is entitled to bail, where there is an agreement to give him bail, before the parties that he agreed to testify against have been tried. We will say, in passing, that there does not appear to have been any definite time stated within which the bail was to be granted; but this record evidences some kind of an agreement by which the party should be entitled to bail at some time, and the applicant says he was to be entitled to bail as soon as the excitement in the neighborhood where the murders occurred should have subsided; and applicant also offered proof to show that the excitement had subsided, and it would be safe for him to return home. After the introduction of the evidence, the judge remanded the applicant with the following order: "It is therefore ordered and adjudged that the application of the said John Greenhaw be denied, and he is hereby remanded to the custody of the said K. Richardson. This order is made, however, without prejudice to the said John Greenhaw's rights under an agreement with the counsel for the State, which, in so far as the matter of bail is concerned, are hereby ascertained to be that he shall be entitled to bail when he shall have made a reasonably continued compliance with his agreement aforesaid; and it is further hereby ascertained that the said John Greenhaw will be entitled to bail at the earliest time at which, in the absence of agreement, he would have been entitled to be bailed, or, in the alternative, to force a trial under article 604 of the Code of Criminal Procedure; provided he shall continue to comply with his said agreement." It appears from the foregoing order of the court that it ratifies the agreement theretofore made with N. B. Morris, representing the State; and the court, in said order remanding applicant, as shown by the above copy of same, states that it is further ascertained "that the said John Greenhaw will be entitled to bail at the earliest time at which, in the absence of agreement, he would have been entitled to be bailed, or in the alternative to force a trial under article 604, Code of Criminal Procedure, provided he shall continue to comply with his said agreement." We think the legal effect of this order is relegating the applicant back to his rights under the statutes

regardless of agreement, because, if he testifies truly, under said agreement, upon the final disposition of the cases, he is entitled to be released. The mere fact that the court approved the agreement does not change the legal aspect of the same. Prosecuting attorneys have no right, under the statutes of this State, in a capital offense to make an agreement thereby granting bail to defendant. Where two parties are indicted for murder, one of whom turns State's evidence, this forms and constitutes, under our law, a continuous contract, the good faith of which must be kept by both parties. Being a continuous contract, the terms and conditions are not consummated until the final trial of the party or parties accused against whom the accomplice agrees to testify. After he has testified against the parties, and they have been convicted, and if appeals are prosecuted, and these appeals have been affirmed by this court, then the accomplice is entitled to his release under the terms of the contract; but not until then. We therefore hold that any agreement, even conceding there is an agreement in this case, is ultra vires, so far as the State is concerned, and one not authorized by law.

We have been cited to no authority which holds that, where a party turns State's evidence, he is entitled to bail. But on this subject we find the following laid down in Bishop's New Criminal Procedure, section 1168: "Before testifying, the accomplice has acquired no special privileges. He is not, consequently, entitled to have bail." In Fleming v. State, 28 Texas Criminal Appeals, 236, after laying down the general proposition as contained in the above articles of the Code of Criminal Procedure, the court hold, in substance, that a county attorney can not make an agreement that is not authorized by statute, although that agreement may be within the apparent scope of his authority. The party with whom he makes the agreement is bound to take notice of the law, and, if an agreement is made with the prosecuting officer, the party with whom he agrees must take cognizance of the law under which he acts, and the extent and scope of his authority; otherwise he acts at his own hazard. There is no authority in Texas for a county or district attorney, or other party acting for them, to agree that an accomplice turning State's evidence shall have bail, in a capital case. Again, in Nicks v. State, 40 Texas Criminal Reports, 1, this language is used: "It is the recognized practice in Texas that the district attorney or the prosecuting officer may permit one or more parties accused of crime to turn State's evidence, and use him or them as witnesses against his codefendants; and the statutes authorizes such officers to dismiss such prosecutions with the consent of the trial court. It is also a practice, recognized in our courts, for the district attorney, with the concurrence of the court, to enter dismissals in this character of case when it is deemed essential to the ends of justice that the parties whose cases are dismissed should turn State's evidence against their confederates. * * * So, where the district attorney enters into such an agreement, and the party turning State's evidence carries

out in good faith his part of the contract, it would seem to terminate his prosecution. But, in order to entitle the defendant to such dismissal, he must in good faith carry out his agreement. In Neeley's case, 27 Texas Criminal Appeals, 324, the contract was violated by the party who agreed to testify, and he was placed upon trial, and convicted, over his protest. The court, in that case, said: 'Having violated his agreement to testify in behalf of the State, the defendant was not entitled to exemption from prosecution by virtue of said agreement. It is well settled that where a particeps criminis, for the purpose of securing exemption from the prosecution, agrees to testify in behalf of the State against his accomplices in crime, and violates such agreement by refusing to testify, in good faith, fairly and fully to facts within his knowledge, he can not claim the benefit of such agreement, and may be prosecuted and convicted, regardless thereof.' " Now, applying the foregoing principles of law to the facts of this case, it appears that applicant has made an agreement with the prosecuting attorney to testify against various defendants in a triple murder, participated in by himself. Under such agreement he is to receive immunity from prosecution in the event he tells freely, fully, and fairly all the facts incriminative of those defendants. As the record stands now before us, this applicant is guilty of murder in the first degree, with the proof evident, and to which he has no defense; and, before he can have a defense, he must testify against said parties as above indicated, until their cases are finally closed in the courts of the country. The agreement he sets up here is only a conditional one, and can not operate as a defense, and thereby authorize him to have bail. Until the agreement is consummated, he has no defense. Therefore, conceding, as stated, that there was an agreement made for bail, still we say it is an agreement not authorized by law, and can not be enforced. It furthermore appearing that the trials of the parties have not taken place, and the applicant showing no cause, other than as above stated, why he should be released, the judgment of the lower court must be affirmed. The disposition of appellant's first assignment of error also disposes of his second assignment. The judgment is affirmed.

*Affirmed.*

HENDERSON, JUDGE (Concurring).—It appears from the record that the applicant made an agreement with N. B. Morris, representing the State of Texas, which was ratified by the district attorney, to testify against his codefendants in three certain criminal cases, in which the parties were charged with murder in the first degree, the applicant himself being implicated in said cases as a principal. Applicant admits that he is guilty of murder in the first degree on proof evident, but claims he is entitled to bail by virtue of his agreement with the State. The evidence tends to show that by the terms of his agreement he was to receive immunity from punishment in all said cases, and that

pending the disposition of the same he was to be allowed bail in a reasonable time. It is further shown that the appellant has testified fully and fairly in the examining trial of his codefendant, and also in the habeas corpus proceeding; and it is insisted ·by him that the reasonable time contemplated by his contract with the State has transpired. I think the following propositions of law on this subject have received the support of adjudicated cases, and may be considered established.

1.  It has been a settled law in this State for a number of years that a defendant could, with the consent of the State, turn State's evidence; that is, become a witness against his codefendants in the same crime, and, as a consideration therefor, receive immunity from punishment. Bowden v. State, 1 Texas Crim. App., 137; Hardin v. State, 12 Texas Crim. App., 186. At common law the rule appears to be that, where such an agreement is made, the court does not extend this immunity, but after conviction the accomplice·receives a pardon. This is not a matter of right, but is equitable only, and is conditioned upon his making a full disclosure of his own guilt and that of his associates. 1 Am. and Eng. Enc. of Law (New Ed.), p. 407, and notes; Rice on Ev., p. 519; United States v. Ford, 99 U. S., 594, 25 L. Ed., 399. In this State it was not definitely settled how this immunity should be granted, whether by courts or the pardoning power, until the well-considered case of Cameron v. State, 32 Texas Criminal Reports, 180. In that case it was held that the question should be presented to the court by plea in abatement, and on hearing, if the court was satisfied that the plea was true, he would order a nolle prosequi or dismissal of the case against the accomplice testifying.

2.  There is some diversity of opinion as to where the power to make the agreement is lodged. In some jurisdictions the prosecuting officer has this power; but in such case, as the general rule, where he exercises this authority, it is invested in him by statute. In most jurisdictions the agreement must be made or at least ratified by the court. 1 Am. and Eng. Enc. of Law, p. 397. In our own State this matter is regulated by statute, and the court alone is authorized to make the contract. Code Crim. Proc., arts. 37, 630, 709; Fleming v. State, 28 Texas Crim. App., 236; Kelly v. State, 36 Texas Crim. Rep., 480; Maeyers v. State (Texas Crim. App.), 49 S. W. Rep., 381; Turney v. State, 40 Texas Crim. Rep., 561; Tullis v. State, ante, p. 87.

3.  I can find no case in which the question has been directly presented as to the terms of this character of contract. I think, however, it may be fairly deduced from the authorities that the State or sovereign can contract with the accomplice upon the following terms only; In consideration that he shall testify fully and fairly as to all he knows in regard to the guilt of his associates in the particular case in which the contract is made, that he will receive immunity from punishment as to such case. Where the immunity is granted by pardon, as in England, the pardon was extended in the particular case, and necessarily did not include incidental matters in regard to that case. Rice on Ev.,

p. 519; 2 Bish. Crim. Proc., sec. 116, et seq.; Rex v. Beardon, 7 Car. & P., 497. In the latter case it was held that the accomplice witness was not entitled to bail pending the disposition of the case against his principal. This is the nearest case in point which I have been able to find. In our own State it is held that the contract can not embrace immunity in other cases. Heinzman v. State, 34 Texas Crim. Rep., 76; Tullis v. State, ante, p. 87.

4. Again it is agreed that there must be a compliance with the terms of the contract on the part of the accomplice before he can claim immunity. This appears to be supported by all the authorities. Neeley v. State, 27 Texas Crim. App., 328; United States v. Hinz (C. C.), 35 Fed. Rep., 272; Commonwealth v. Knapp, 10 Pick., 477. So it follows, if the accomplice testifies corruptly or falsely, he can not claim immunity. This would appear to be in harmony with the proposition that this immunity from punishment is not to be extended until after the accomplice has testified. As I understand applicant's contention, he insists that the prosecuting officers representing the State have the right to make a contract with the accomplice, granting him, in consideration of his testimony in the particular case, immunity from punishment in that case, without any interposition or approval of the contract on the part of the court or judge; and, furthermore, that this contract of immunity from punishment embraces everything incidental to that particular case, including the right to bail in a non-bailable case, or the dismissal of such case, prior to the final disposition of the case in which the accomplice is to testify. I can not regard either of said propositions as sound. As we have seen, in regard to the first proposition, the rule is firmly established in this State that no such contract can be made without the approval of the judge trying the case; and it necessarily follows that any contract made with out the consent or approval of the judge is without authority of law. In this particular case, as I understand it, there is no pretense that either the justice of the peace who presided at the examining trial or the judge who presided on habeas corpus trial knew, when applicant testified, that it had been stipulated as a part of the consideration to accrue to applicant that he was to be granted bail pending the final disposition of the case in which he was to testify. So, if it be conceded that such a stipulation was made between the district attorney, representing the State, and appellant, it was not ratified by the judge, and was not obligatory and binding upon the State. Moreover, if such an agreement to permit applicant to have bail pending the disposition of the cases in which he was to testify had been made by the proper authorities, such a contract was ultra vires, and without authority of law. The right of an accused person to contract for immunity from punishment does not embrace other matters, though they may appertain to the particular case. If the contract could embrace one incident, it could include other provisions; and thus not only might a party claim the right to bail, but he might make and enforce a contract for the

absolute dismissal of the case against him as a condition precedent to his testifying against his codefendant. Immunity from punishment was never intended to announce such a proposition. It simply apprehends immunity from punishment in the particular case; and in England and in most of the States this immunity from punishment is only extended by a pardon, after the witness has fully and fairly testified in the particular case against his codefendants. Here, as we have seen, an accomplice is not driven to an executive pardon, but is protected by the court itself, which authorizes a dismissal or nolle prosequi of the case. This dismissal is after such accomplice has fully and fairly testified against his codefendants, and he can not be said to have fully performed his contract until the final disposition of the case against his codefendant. His contract is a continuous one, and he has no right under it until he has finally testified in the case. So the question of applicant's reasonable compliance with his contract can not arise until the final trial of his codefendants, as it can not be known until then whether or not he will fulfill his obligation to testify. He may, at any time before the final trial, refuse to testify against his codefendant, or testify falsely; and under all the authorities, when he makes a breach of the contract, he is no longer entitled to immunity from punishment under it. If the rule were otherwise in a capital case such as this, applicant might contract for bail, or even for the dismissal of the case against him, to be extended before the final trial of his codefendant; and he might abscond, or he might attend, and refuse to testify, or testify falsely; and, in either event, he would have the State at a disadvantage. Viewing the question from every standpoint, it occurs to me that the rule which confines a contract between the State and an accomplice to the simple proposition that the State will accord the accomplice immunity from punishment after he has fully and truly testified in the final trial is a safe and sound one. Nor can the applicant complain in this case that he is undergoing a hardship and punishment by being confined in jail pending the final disposition of the case against his codefendants. The consideration, so far as he is concerned, is both ample and humane, as, by the terms of the contract, after he has fully complied with it, the State agrees to turn him loose, and let him go free, although, according to his own confession, he is guilty of murder in the first degree, and ought to be hanged.

December 5, 1899.