**Ex parte Jeff MOOREHOUSE.**

**No. 66216.**

Court of Criminal Appeals of Texas, En Banc.

April 22, 1981.

Douglas Tinker, Corpus Christi, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an attempted appeal from an order of contempt entered in the 105th District Court holding petitioner in contempt for refusing to answer certain questions before a Nueces County grand jury.

■ It is well established that there is no right of appeal from an order of contempt. *Ex parte Supercinski*, 561 S.W.2d 482 (Tex. Cr.App.1977); *Arnold v. State*, 493 S.W.2d 801 (Tex.Cr.App.1973); *Gardner v. State*, 171 Tex.Cr.R. 521, 352 S.W.2d 129 (1961). See also *Ex parte Cardwell*, 416 S.W.2d 382 (Tex.1967).

The normal course of any review of a contempt order "regarding criminal law matters" is by an original application for writ of habeas corpus filed in this court. See Article V, § 5, Texas Constitution, as amended in 1977. Cf. *Ex parte Supercinski*, supra.

We do not have in the record before us an original application for writ of habeas corpus for review of the contempt order as in *Supercinski*.

■ We do find in the transcript before us an undated instrument bearing no file mark entitled "Application for Writ of Habeas Corpus." It was apparently addressed to the trial court. It does not state the normal allegations of such an application. It merely states that the petitioner Moorehouse had been found in contempt and that he gives notice of appeal to the Court of Criminal Appeals and requests the trial court to set bail pending an appeal. On the said instrument is a signed order by the trial judge setting the appeal bond at $1,000.00. The instrument is obviously, from its wording, a notice of appeal from the contempt order and a request for bail and not an application for writ of habeas corpus. We find in the record three days after the order of contempt dated October 3, 1980, a written notice of appeal dated October 7, 1980 giving notice of appeal from the "judgment of contempt." Such an appeal is a nullity. *Arnold v. State*, supra.

■ Further, it is well settled that there is no appeal from a refusal to issue or grant a writ of habeas corpus, *Ex parte Smith*, 85 Tex.Cr.R. 649, 215 S.W. 299 (1919); *Nichlos v. State*, 158 Tex.Cr.R. 367, 255 S.W.2d 522 (1952), even after a hearing. *Ex parte Hughes*, 20 S.W.2d 1070 (Tex.Cr.App.1929). See Article 44.34, note 5, V.A.C.C.P.

If the instrument entitled as a habeas corpus application was presented to the trial court as such, the court issued no writ of habeas corpus and conducted no hearing. From the lack of action by the trial court, there is no appeal available concerning the habeas corpus application, and further, we observe that there was no notice of appeal given concerning any habeas corpus proceeding in the trial court.

There have been cases where we have considered an application for a writ of mandamus as an application for writ of habeas corpus, e. g., *Ex parte Giles*, 502 S.W.2d 774, 779 (Tex.Cr.App.1973), or an application for writ of prohibition as an application for writ of mandamus, e. g., *Vance v. Clawson*, 465 S.W.2d 164 (Tex.Cr.App.1971), cert. den. 404 U.S. 910, 92 S.Ct. 226, 30 L.Ed.2d 182.

Even if it could be argued that the record before us should be considered as an original application for a writ of habeas corpus

before this court, there are some observations that should be made.

Part of the record before us reflects a hearing on a motion to quash the subpoena issued for the petitioner Moorehouse to appear before the grand jury of the 105th District Court whose term had been extended.

In the hearing on October 3, 1980 on the motion to quash the subpoena ordering the petitioner Moorehouse to appear before the February term grand jury of the 105th District Court, Moorehouse testified he was an attorney at law in good standing with the State Bar who had represented George Taylor and Boyd Smith, suspects in the investigation on previous legal matters prior to May 15, 1980, the possible date of the incident under investigation by the grand jury. He also indicated he had conferred with them about the matters since May 15, 1980. The petitioner demanded unsuccessfully to know if he also was a suspect. In overruling the motion to quash the subpoena, the court indicated there was no attorney-client relationship involved.[1]

On the same date Moorehouse was returned to court where the prosecutor reported Moorehouse had answered two questions before the grand jury but as to all other questions he had invoked his privilege against self-incrimination (5th Amendment) and the attorney-client privilege. The questions propounded were presented to the court which ruled that certain questions could not be properly asked because of the attorney-client privilege or the 5th Amendment. Certain other questions the court determined should be answered. Moorehouse was then orally ordered to return to the grand jury to answer the questions or go to jail until he answered the questions or until the term of the grand jury expired.

■ On October 3, 1980, the court entered a written order holding the petitioner Moorehouse in contempt and committing him to jail until he was willing to testify. No fine was also imposed as required by Article 20.15, V.A.C.C.P. The written order was not in compliance with the law.

It has been held that incarceration for contempt for refusal to answer questions before the grand jury and a district judge on grounds that the questions would incriminate the witness would be unauthorized. *Ex parte Medlin*, 107 Tex.Cr.R. 421, 295 S.W. 1097 (1927).

The record shows that on October 17, 1980 Moorehouse was a named unindicted co-defendant in the indictment presented on that date charging the offense of "Engaging in organized criminal activity to commit aggravated assault."

■ The record further shows that on October 29, 1980 the grand jury involved, whose term had been extended, was discharged. *Ex parte Jackson*, 95 Tex.Cr.R. 200, 253 S.W. 287 (1923), held that a witness cited for contempt for refusal to answer questions before a grand jury and confined to jail until he so testified was purged of contempt when the discharge of the particular grand jury was ordered. "It would seem that when the end is no longer possible of accomplishment, further resort to the means would be held futile." *Jackson* at pp. 288–289.

Therefore, even if an original application for writ of habeas corpus was before this court, the question would be moot in view of the expiration of the grand jury term. We hold, however, this was merely an attempted appeal from an order of contempt which is not reviewable by direct appeal. The appeal is dismissed.

ROBERTS, DALLY and TEAGUE, JJ., concur in the result.

CLINTON, Judge, concurring.

Since Article 20.15, V.A.C.C.P., does not come to our attention often, while we are explicating it in this cause I would hold that it is facially unconstitutional and then give it an interpretative gloss that makes it constitutional.

1. The record indicates that both Smith and Taylor were represented by other counsel at the time of the hearing.

Much has been written on the subject of officially compelling one to give answers which are claimed to be incriminatory, and a good deal of the holdings are collected in *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).[1] *Kastigar v. United States*, cited in the margin, is the seminal decision on the point, though the Supreme Court had earlier twice held that grand jury witnesses, each a police officer, have the right to stand on the constitutional privilege until immunity is given, *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Stevens v. Marks*, 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966), and may not be penalized for exercising the right, *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Same is true of a lawyer, *Spevack v. Klein*, 385 U.S. 511, 514,[2] 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967).

In purporting to grant a discretionary power—"the court may compel the witness to answer the question"—that the court is to exercise by holding a privileged witness in contempt, imposing a fine and committing him to jail until willing to testify, Article 20.15, supra, plainly abridges his Fifth Amendment protection against self-incrimination incorporated into the Fourteenth Amendment against the State, as well as his right vouchsafed by Article I, § 10 of the Constitution of Texas.

However, the power is to be exercised only "if [the question] appears to be a proper one," Article 20.15, supra. Yet, this language is quite susceptible of the altogether reasonable interpretation that the question is not "proper" unless "use" immunity has been extended to the answer given by the witness.[3]

With these additional observations, I join in the opinion of the Court.

1. "The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against him in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. * * * In any of these contexts, therefore, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. *Kastigar v. United States*, 406 U.S. 441 [92 S.Ct. 1653, 32 L.Ed.2d 212] (1972)."

2. "We conclude ... that the Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth, that it extends its protection to lawyers as well as to other individuals, and that it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it."

The Court further explained that in context "'penalty' is not restricted to fine or imprisonment. It means ... the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'," *id.*, at 515, 87 S.Ct. at 628.

3. Though a procedure for grant of immunity has not been expressly provided by the Legislature, as the Court demonstrated in *Ex parte Muncy*, 72 Tex.Cr.R. 541, 163 S.W. 29 (1914), "The right under our law of the district attorney, with the knowledge and consent of the district judge, to guarantee immunity from prosecution and punishment has never been seriously questioned in this state," *id.*, at 38. The then extant statutory authority for the grant, *id.*, at 45 and 54, similar to provisions in predecessor codes cited in earlier decisions to the same effect, e. g., *Barrara v. State*, 42 Tex. 260, 263 (1875); *Camron v. State*, 32 Tex.Cr.R. 180, 22 S.W. 682 (1893); *Ex parte Greenhaw*, 41 Tex.Cr.R. 278, 53 S.W. 1024 (1899), have since been melded into Article 32.02, V.A.C. C.P. See *Washburn v. State*, 164 Tex.Cr.R. 448, 299 S.W.2d 706 (1956).