UNITED STATES of America,
Plaintiff,

v.

John W. LAWSON, Defendant.

No. 3–65–Cr. 60.

United States District Court
D. Minnesota,
Third Division.

April 27, 1966.

Sidney P. Abramson, Asst. U. S Atty., Minneapolis, Minn., for plaintiff.

Terence N. Doyle, St. Paul, Minn., for defendant.

## MEMORANDUM

LARSON, District Judge.

By an Indictment returned on October 29, 1965, defendant John W. Lawson has been charged with violating 18 U.S.C. § 152 by concealing and transferring assets of the bankrupt Belmont Club, Inc., of which he was president, with intent to defeat the bankruptcy laws. It is alleged in the Indictment that a petition for an involuntary bankruptcy was filed against the Belmont Club, Inc., on June 20, 1963, which corporation was thereafter adjudicated a bankrupt on July 9, 1963.

Defendant now moves to dismiss the Indictment on the following grounds: (a) There was unnecessary delay in presenting the charges to the grand jury; (b) the Indictment, and the statute on which the charges are based, are vague

and ambiguous; (c) defendant is immune from prosecution by virtue of having testified in the bankruptcy proceedings; and (d) the Indictment is based on matters about which defendant testified in a bankruptcy hearing. Ground (a) is based on Rule 48(b), Fed.R.Crim. Proc.; ground (b) on the due process clause of the Constitution; ground (c) on the immunity provision of 11 U.S.C. § 25(a) (10); and ground (d) on the last mentioned statute, as well as the constitutional privilege against self-incrimination.

*Self-Incrimination—*

Under the Bankruptcy Act, 11 U.S.C. § 25(a), the bankrupt is required to assist the Bankruptcy Court in a number of ways, including filing schedules of assets and liabilities; producing books and records; and testifying concerning the conduct of his business, his dealings with creditors, the nature and location of his property. Where the bankrupt is a corporation, an officer or director may be required to perform these duties, 11 U.S.C. § 25(b). Although the bankrupt's testimony concerning his estate may be compelled, 11 U.S.C. § 25(a) (10) provides that:

"* * * no testimony given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge."

Here we are not concerned with testimony that falls within the proviso clause, but there is involved the testimony of defendant as president of a corporate bankrupt. Defendant contends that if the transcript of his testimony was used before the grand jury, the Indictment must be dismissed.

■ At least two threshold questions are presented. One is whether an officer or director of a corporate bankrupt is entitled to the benefit of § 25(a) (10). There is authority, which is accepted here, that where an individual is required to perform the duties of a corporate bankrupt, the shield of § 25(a) (10) does protect him. United States v. Castellana, 349 F.2d 264, 274 (2d Cir. 1965); United States v. Weissman, 219 F.2d 837 (2d Cir. 1955); 1 Collier, Bankruptcy, Par. 7.21, p. 1020 (14th ed. 1964). A second question is whether a grand jury investigation is a "criminal proceeding." It has been so held. Stevens v. Marks, 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966); Schwimmer v. United States, 232 F.2d 855, 860 (8th Cir. 1956).

■ Defendant's suspicions that his testimony before the Bankruptcy Court was used in the grand jury were aroused by indications in the bankruptcy file that the Referee not only suggested an investigation by the United States Attorney's office, but also sent a transcript to that office. It has now resulted that these suspicions are not well founded. The Assistant United States Attorney originally assigned to investigate the case states by affidavit that he did not present to the grand jury any testimony relating to defendant's appearance before the Bankruptcy Court. It is also stated that none of the witnesses subpoenaed by the Government either gave testimony concerning defendant's bankruptcy appearance or had a transcript of those proceedings. An affidavit was also filed by the F.B.I. Agent who investigated the bankruptcy of the Belmont Club, Inc., and who testified before the grand jury. He, too, states that nothing regarding defendant's testimony in the bankruptcy hearing was related to the grand jury. Based upon these affidavits, defendant seems to agree that the protection of § 25(a) (10) was not violated.

However, defendant also refers to the privilege against self-incrimination, arguing that the Indictment may have been obtained in violation of that privilege. While it is not explicitly stated, defendant may be arguing that even though his testimony was not presented in evidence at the grand jury proceeding, nonetheless the privilege is violated if the Indictment is based upon information obtained as a result of his testimony. This raises the "fruit of the poisonous tree" issue, often

associated with evidence obtained as a result of an illegal search and seizure or a coerced or otherwise unlawful confession. An analogous situation was presented in Jones v. United States, 342 F.2d 863 (D.C.Cir.1964). A number of opinions were written in that case, and the eleven member panel realigned for various issues. However, the majority held the confession obtained in that case was illegal and that since the accused testified before the indicting grand jury, where he affirmed the confession previously made, the District Court should determine whether other evidence, apart from the confession, was presented. If not, then the Indictment should be dismissed. More relevant to the present proceeding is the dicta. A minority of the panel took the view that where an accused is compelled to testify before the grand jury, in the absence of advice from counsel, the Indictment must be dismissed without regard to the other evidence presented. The minority judges based their opinion upon the privilege against self-incrimination and the guarantee of right to counsel.

An argument could be made in the present case that if leads were obtained from defendant's testimony before the Bankruptcy Court, which resulted in evidence presented to the grand jury, his self-incrimination privilege would be violated, requiring dismissal of the Indictment. Even if the law is moving in this direction, defendant here would not have grounds for complaint. A review of defendant's testimony discloses that he was able to recall very little concerning the assets of the bankrupt corporation. While his testimony does show that he and another corporate officer received payment for the sale of the bankrupt's property, this fact appeared in the bankruptcy file long before defendant testified. In fact, his examination was prompted by an independent discovery of this transaction. It thus seems apparent that his testimony furnished no information which could have led to evidence presented before the grand jury. Accord-ingly, the Indictment cannot be dismissed based on ground (d) above.

*Statutory Immunity—*

Defendant further contends that § 25(a) (10) grants complete immunity from prosecution to a person compelled to testify in the bankruptcy proceedings, regardless of whether his testimony is offered in evidence in a subsequent criminal proceeding. It is defendant's position that the sole purpose of this statute is to supplant the Fifth Amendment privilege.

■■ The latter contention is answered negatively in Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920), in which an involuntary bankrupt refused to answer questions in a bankruptcy hearing, claiming the privilege. He was committed to jail and sought a writ of habeas corpus, which was denied. The Supreme Court reversed, holding that § 25(a) (10) was not a substitute for the constitutional privilege. The effect of this decision is that notwithstanding the protection of § 25(a) (10), a bankrupt may still claim the privilege against self-incrimination. Herein lies the difference between the bankruptcy "immunity" and the statute involved in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), cited by defendant. There the Supreme Court reversed orders of the Board requiring petitioners to register as members of the communist party. The orders were ruled invalid since they conflicted with the Fifth Amendment privilege. The Government relied on the immunity provision of the registration statute which stated that "[t]he fact of the registration of any person * * * shall not be received in evidence against such person in any prosecution for any alleged violation" of other sections of the Act, or any other criminal provision. Using the standards set up in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), the court ruled the immunity provision of the Subversive Activities

Control Act of 1950, 50 U.S.C. § 783(f), did not validate the registration orders. In *Counselman,* it was stated that an immunity statute is valid only if it grants the witness an "absolute immunity against future prosecution for the offense to which the question relates." From this starting point, defendant maintains the bankruptcy provision must be read as granting complete immunity if it is to be constitutional. Defendant has misconceived the scope of *Counselman* and *Albertson.* These decisions suggest that the constitutional privilege must remain available unless a statutory immunity is provided which is as broad as the privilege. Where a statute forces the individual to choose between answering or being punished for invoking the privilege, without at the same time granting a complete immunity, then it becomes unconstitutional. The Supreme Court stated the rule thus in Stevens v. Marks, 383 U.S. 234, 86 S.Ct. 788, 794–795, 15 L.Ed.2d 724 (1966):

"A witness has, we think, a constitutional right to stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity, as broad in scope as the privilege it replaces, is available and applicable to him."

Turning again to the bankruptcy statute, the decision in Arendstein v. McCarthy, supra, makes it clear that no burdensome choice is placed upon the person required to testify. Because the immunity is not as broad as the constitutional privilege, the latter may still be invoked, as it was by the president of a corporate bankrupt in Matter of Mutual Security Savings & Loan Association, Inc., 214 F.Supp. 877 (D.Md.1963). In that case the District Court outlined a procedure by which the witness could claim the privilege, while at the same time the Bankruptcy Court could obtain the information necessary to protect the rights of the creditors.

▮ Defendant here testified without benefit of counsel and made no claim to the privilege. Although it is late in the proceedings to raise the privilege with respect to his bankruptcy testimony, since it is determined that § 25(a) (10) does not grant complete immunity, the privilege should perhaps be considered. Matter of Mutual Security Savings & Loan Association, Inc., supra, indicates that the witness is never permitted to stand on his own determination that the matters involved are subject to the privilege, but rather the issue must be judicially determined. The inquiry in the Bankruptcy Court in this case revolved around two basic questions: One, whether or not defendant received substantial sums from the sale of the bankrupt's assets; and, two, what disposition was made of those sums? As indicated above, the Referee and Trustee were already aware that defendant may have received these amounts. Although the Supreme Court stated in *Albertson* that "the judgment as to whether a disclosure would be 'incriminatory' has never been made dependent on an assessment of the information possessed by the Government at the time of interrogation," it seems that the question presented here is materially distinct from the issue which the Court faced in that case. Here the question is whether an Indictment must be dismissed because of an alleged violation of the privilege. In the Supreme Court it was "proposed that this assessment be made in order to remedy a shortcoming in a statutory grant of immunity." The Court was faced with interpreting a statute which would be applicable to many different fact situations. Here, there is no question of statutory interpretation. The issue is whether defendant has been compelled to incriminate himself. Under the circumstances of this particular case, I think this question can be considered in light of previous proceedings. I thus conclude that defendant was not forced to incriminate himself by testifying to receipt of the proceeds from sale of the bankrupt's assets. As to the second area of inquiry before the Bankruptcy Court, it also appears that defendant did not incriminate himself. As mentioned above, he was unable to recall the disposition which was made of these funds.

His testimony was tantamount to a refusal to answer on the grounds of the privilege. Based on these factors, I conclude that defendant has not been prejudiced by testifying even though § 25(a) (10) does not grant complete immunity.

*Vagueness—*

██ Defendant assails the statute under which he is charged, as well as the Indictment, on the ground that they are unconstitutionally vague. A statute may violate the due process clause if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Essentially the same standard is used in testing the sufficiency of an Indictment. It must state the nature and cause of the accusation with the degree of certainty reasonably necessary to enable a defendant to prepare a defense against it and to protect himself against another prosecution on the identical charge. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Beitel v. United States, 306 F.2d 665 (5th Cir. 1962).

Since defendant's challenge is directed to the same language in both the statute and the Indictment, they may conveniently be considered jointly. The sixth paragraph of 18 U.S.C. § 152 prohibits, and the Indictment charges, the transfer or concealment by an officer of property belonging to a corporate bankrupt, with intent to defeat the bankruptcy laws. It is this last phrase which defendant contends is vague. The argument is the bankruptcy laws include a multitude of sections, containing many requirements and prohibitions, and thus a defendant is unable to ascertain exactly what conduct is criminal under the statute, and what the Indictment charges. Defendant suggests several situations where it is impossible to determine if the bankruptcy laws are defeated thereby. For example, he questions whether paying for catering service to entertain friends can be construed as defeating the bankruptcy laws.

██ Defendant's argument emanates from a misconception of the offense stated in 18 U.S.C. § 152, which does not arise from any vagueness or ambiguity in the statute itself. The conduct made criminal in paragraph six is the transfer or concealment of property belonging to a corporate bankrupt. This is the substance of the offense and the charge in the Indictment. The terms "transfer" and "conceal" are certainly not without meaning to men of common intelligence. Moreover, this statute has been subject to construction which gives content to its terms. The phrase "with intent to defeat the bankruptcy laws" means only that the conduct must have been wilful. As a general rule, criminal statutes do not punish inadvertent conduct. The statute here requires that the transfer or concealment be done knowingly and fraudulently. In addition, the statute makes a transfer or concealment wilful if effected with intent to defeat the bankruptcy laws.

> "This double intent, however, has a limited operation. In any situation in which a person knowingly received property in order to keep it from creditors [or knowingly transferred or concealed property] it would necessarily be with intent to defeat the principal purpose of the Act, namely, to distribute equitably the bankrupt's assets among his creditors." 2 Collier on Bankruptcy, Para. 29.08 [3.4] p. 1211 (14th ed. 1962).

Thus the phrase complained of does not relate to the entire Bankruptcy Act in the sense that defendant must guess what particular section his alleged conduct defeated. The statute puts an individual on notice that he is engaged in criminal conduct if (1) being an officer of a corporate bankrupt, he (2) transfers or conceals (3) property belonging to the corporation (4) knowingly, with intent to defeat the bankruptcy law, i. e., to keep those assets from the bankruptcy estate. It is not the function of this Court, on a motion to dismiss the Indictment, to

determine whether the conduct charged was done knowingly or with intent to defeat the bankruptcy laws. This is for the jury to resolve. Burchinal v. United States, 342 F.2d 982 (10th Cir. 1965). The statute and the Indictment are not unduly vague or ambiguous.

*Delay—*

Defendant's final challenge to the Indictment is premised on Rule 48(b), Fed.R.Cr.Proc., which provides:

"If there is unnecessary delay in presenting the charges to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

A letter from the United States Attorney to the Bankruptcy Referee suggests that investigation of this case commenced some time in January, 1964. The Indictment was returned in late October, 1965. The delay in presenting the charges, contends defendant, was prejudicial and requires dismissal of the Indictment. The Government argues that the Sixth Amendment's guarantee of a speedy trial begins after a prosecution has been commenced and, prior thereto, the statute of limitations protects a defendant from tardy prosecution. In addition, the Government states that its investigation was hampered by inability to locate defendant.

The Sixth Amendment's protection begins only after a prosecution has commenced, but defendant does not base his argument on that guarantee. Whether or not an Indictment may be dismissed for delay in presenting the case to the grand jury under Rule 48(b) depends upon what is reasonable under the circumstances of the particular case. Crow v. United States, 323 F.2d 888 (8th Cir. 1963). In that case the Court stated:

"The prosecutor is entitled to a reasonable time to investigate an offense for the purpose of determining whether a prosecution is warranted. A reasonable time must also be allowed for the preparation of a case for submission to the grand jury." 323 F.2d at 890.

A motion for dismissal under Rule 48(b) calls for the exercise of discretion and where there is no evidence of intentional, vexatious delay or unreasonable harassment, the motion may be denied. Foley v. United States, 290 F.2d 562 (8th Cir. 1961). That case upheld the denial of a motion to dismiss where the time lapse between investigation and indictment was five years. An eleven month delay to allow an undercover narcotics agent to complete his work was held permissible in United States v. Simmons, 338 F.2d 804 (2d Cir. 1964). United States v. Kaufman, 311 F.2d 695 (2d Cir. 1963), ruled a thirteen month delay justifiable where a primary Government witness was absent.

Considering the circumstances of this case, I conclude the delay was not unreasonable. Apparently, part of the year and a half delay here was consumed by attempts to locate defendant. In addition, there is nothing to indicate intentional or vexatious harassment by the Government. Although defendant maintains that he will need to call witnesses to testify concerning disposition of the funds allegedly transferred or concealed, who may not be available, there has been no express showing that these persons are unavailable. United States v. Hunter Pharmacy, Inc., 213 F.Supp. 323 (S.D.N.Y.1963), suggests that defendant has the burden of showing some actual prejudice to support a motion for dismissal under Rule 48(b). The motion to dismiss cannot be granted on the basis of Rule 48(b), nor on any of the other grounds advanced for the reasons heretofore stated.