In the Matter of Jack KORMAN and Robert W. Likas, Witnesses Before the Special February 1971 Grand Jury, Appellants.

No. 71–1328.

United States Court of Appeals, Seventh Circuit.

May 20, 1971.

Anna R. Lavin, George F. Callaghan, Robert S. Bailey, Edward J. Calihan, Jr., Chicago, Ill., for Jack Korman and Robert W. Likas.

William J. Bauer, U. S. Atty., Sheldon Davidson, Asst. U. S. Atty., Chicago, Ill., for appellee; Lee A. Hawke, Sp. Atty., Dept. of Justice, John Peter Lulinski, Jeffrey Cole, Asst. U. S. Atty., of counsel.

Before SWYGERT, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

## PER CURIAM.

■ This is an appeal from judgments of civil contempt and concomitant orders of commitment entered pursuant to 28 U.S.C. § 1826 [1] on April 20, 1971 upon a finding by the district court that appellants had declined to answer one or more questions propounded to them before the Special February 1971 Grand

1. 28 U.S.C. § 1826 provides:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Jury for the Northern District of Illinois.[2] The district court determined that appellants had relied upon the fifth amendment privilege against self-incrimination despite the previous entry of an order pursuant to section 201 of the Organized Crime Control Act of 1970, 18 U.S.C. § 6001 *et seq.*,[3] commanding them to answer and granting them immunity from the use in a criminal case [4] of any evidence obtained by their answers. We reverse.

At the hearing on the Government's motions for orders holding appellants in contempt for failure to comply with the orders commanding them to answer and immunizing them, the only evidence submitted to the district court tending to establish that appellants had not complied with the immunity orders was the unsworn statement by the Government attorney that they had reappeared before the grand jury and refused to answer questions. Appellants' brief, however, states that subsequent to the entry of the immunity order "[t]he witnesses were again taken before the Grand Jury and persisted in their refusal to answer the inquiries." Accordingly, we need not reach the question raised by appellants as to whether the failure of the district court to conduct an evidentiary hearing with regard to noncompliance with the immunity orders invalidates the judgments of contempt as violative of the due process clause of the fifth amendment.

■ Appellants' continued refusal to answer the questions put to them before the grand jury was based on their expressed belief that the use-restriction immunity granted by 18 U.S.C. § 6002 is inadequate to supplant their fifth amendment privilege.[5] The question

---

2. The petitions filed by the Government seeking the entry of immunity orders stated that this grand jury was in the process of investigating possible violations of 18 U.S.C. §§ 371, 1511, 1952 and 1955.

3. 18 U.S.C. § 6002 provides:
   Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
   
   (1) a court or grand jury of the United States,
   
   (2) an agency of the United States, or
   
   (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
   
   and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

4. Appellants have argued at some length that section 6002 is unconstitutional be-

cause, while it prohibits the use in "any criminal case" of any evidence obtained under the compulsion of an immunity grant, it does not expressly proscribe the use of compelled testimony or its fruits in proceedings to impose fines, penalties or forfeitures. That argument is without merit. The language of the statute simply repeats verbatim the language of the fifth amendment in that regard and must be read as incorporating the attendant judicial glosses on the constitutional language. Accordingly, the statute as written effectively prohibits the use of compelled testimony and its fruits in proceedings to impose fines, penalties or forfeitures which are criminal in nature for fifth amendment purposes. United States v. United States Coin & Currency, 401 U.S. 715, 718, 91 S.Ct. 1041, 1043–1045, 28 L.Ed.2d 434 (1971).

5. Appellants' primary contention is that the Constitution requires complete transactional immunity and that no use-restriction immunity can suffice, but they also argue that the immunity granted by 18 U.S.C. § 6002 is inadequate to supplant their constitutional privilege because it does not grant them sufficient protection even from the *use* of their compelled testimony. Thus, it may be argued that a witness' compelled testimony may be used to indict him and his only recourse will be to move at trial that the indictment be quashed or that the fruits of his testimony be suppressed.

presented to us is whether the statements in Counselman v. Hitchcock, 142 U.S. 547, 586, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892), to the effect that a valid immunity statute 'must afford absolute immunity against future prosecution for the offense to which the question relates" have been so undermined by subsequent Supreme Court decisions that they can no longer be considered binding on the lower federal courts. The Government contends that such statements in *Counselman* were mere dicta and that, in any event, they have been limited or overruled, sub silentio, by Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 Ct. 1594, 12 L.Ed.2d 678 (1964). We disagree. We hold that *Counselman* remains the binding authoritative exposition of the minimal constitutional requirements for immunity statutes. Those minimal constitutional requirements prohibit the federal government, absent a grant of absolute immunity from prosecution for any transaction to which his compelled testimony relates, from committing for contempt a witness who relies on his fifth amendment privilege and refuses to testify.

The statements in *Counselman* that full transactional immunity is a constitutional prerequisite to compelling a witness to testify cannot be regarded as dicta. Admittedly, the holding of *Counselman* was that a statute prohibiting only the direct use of compelled testimony was insufficient to displace the constitutional immunity, but the ground for that holding was that the Court was "clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege * * *." 142 U.S. at 585, 12 S.Ct. at 206. The Court did observe, 142 U.S. at 586, 12 S.Ct. at 206, that: "Section 860 [the immunity statute there considered], moreover, affords no protection against the use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime, and of sources of information which may supply other means of convicting the witness or party"; but we believe that observation, at most, states an alternative ground for the Court's holding which does not detract from the force of the ground more specifically relied on.

Moreover, we need not look solely to *Counselman* in deciding whether complete transactional immunity is the constitutional standard. Four years later in Brown v. Walker, 161 U.S. 591, 594, 16 S.Ct. 644, 646, 40 L.Ed. 819 (1896), the Court considered *Counselman* and stated that "the gist of that decision" is found in the following language:

> We are clearly of opinion that no statute which leaves the party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution of the United States. Section 860 of the Revised Statutes does not supply a complete protection from all the perils against which the

---

As a practical matter a witness will, if indicted and tried, be forced to bear the impossible burden of proving that evidence offered by the Government is tainted. Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), indicates that burden rests on the Government; but neither that case nor the statute makes clear the extent of the Government's burden—whether it must show freedom from taint beyond a reasonable doubt, or by a mere preponderance of the evidence. Whatever the Government's burden of proof, there is the danger that the Government's assertions that its evidence was independently obtained will, as a practical matter, not be subject to challenge because all of the evidence is in the hands of the Government and because it is impossible to tell what subtle influences the Government's knowledge of a witness' compelled testimony had. *See* Piccirillo v. New York, 400 U.S. 548, 567–568, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971) (Brennan, J., dissenting from the dismissal of certiorari). Since we hold that Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), requires complete transactional immunity, we need not consider these alternative arguments.

constitutional prohibition was designed to guard, and is not a full substitute for that prohibition. In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecutions for the offence to which the question relates. [Quoting from *Counselman*, 142 U.S. at 585–586, 12 S.Ct. 195 at 206].[6]

In upholding a complete transactional immunity statute, the Court relied on the fact that under the challenged statute a witness' testifying under compulsion "operates as a pardon" for any crimes revealed by his testimony. Again, as in *Counselman*, the Court based its decision on the ground that absolute immunity from prosecution must be granted before the Government can compel a witness to testify.[7]

The complete transactional immunity standard announced in *Counselman* has been consistently reaffirmed by the Supreme Court. In Hale v. Henkel, 201 U.S. 43, 67, 26 S.Ct. 370, 376, 50 L.Ed. 652 (1906), the Court recognized that *Counselman* had declared that absolute immunity from future prosecution is required; the Court there upheld a contempt citation, stating that:

> If the testimony relate to criminal acts long since past, and against the prosecution of which the statute of limitations has run, or for which he has already received a pardon or is guaranteed an immunity, the amendment does not apply.

United States v. Murdock, 284 U.S. 141, 149, 52 S.Ct. 63, 65, 76 L.Ed. 210

(1931),[8] reviewed the precedents and stated that:

> The principle established is that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination. Counselman v. Hitchcock, 142 U.S. 547, [12 S.Ct. 195, 35 L.Ed. 1110]. Brown v. Walker, 161 U.S. 591, 606, [16 S.Ct. 644, 40 L.Ed. 819]. Jack v. Kansas, 199 U.S. 372, 381 [26 S.Ct. 73, 50 L.Ed. 234]. Hale v. Henkel, 201 U.S. 43, 68 [26 S.Ct. 370, 50 L.Ed. 652].

In McCarthy v. Arndstein, 266 U.S. 34, 42, 45 S.Ct. 16, 69 L.Ed. 158 (1924), the Court held that Congress could not require a bankrupt to testify before a special commissioner unless it provided the bankrupt with a "complete immunity from a prosecution." In United States v. Monia, 317 U.S. 424, 428, 63 S.Ct. 409, 411, 87 L.Ed. 376 (1943), the Court again reaffirmed that *Counselman* required transactional immunity, stating that *Counselman* "indicated clearly that nothing short of absolute immunity would justify compelling the witness to testify if he claimed his privilege." Again in Smith v. United States, 337 U.S. 137, 147, 69 S.Ct. 1000, 1005, 93 L.Ed. 1264 (1949), the Court upheld a full transactional immunity statute. The Court stated that, "This remission of responsibility for criminal acts met the 'absolute' test of the constitutional provision against self-incrimination." In Adams v. Maryland, 347 U.S. 179, 182, 74 S.Ct. 442, 445, 98 L.Ed. 608 (1954),

---

6. The Court stated in *Brown*, 161 U.S. at 594, 16 S.Ct. at 646, that the inference to be drawn from the language quoted from *Counselman* is that "if the statute does afford such immunity against future prosecution, the witness will be compellable to testify." We believe that the inference from that language in *Brown* is clearly that *only* when such immunity is granted is the fifth amendment privilege displaced.

7. Our belief that the Court in *Counselman* and in *Brown* viewed transactional

immunity as the minimal constitutional requirement is bolstered by the fact that in *Brown* there were four dissenters, including two from the unanimous *Counselman* Court, who argued that even transactional immunity was insufficient to supplant the constitutional privilege.

8. *Murdock*, insofar as it held that fear of state prosecution did not justify a refusal to answer questions put by federal officers, was disapproved by Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

the Court said that in *Counselman,* "this Court held that an act not providing 'complete' immunity from prosecution was not broad enough to permit a federal grand jury to compel witnesses to give incriminating testimony."

In 1956, Mr. Justice Frankfurter, writing for the Court in Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), reviewed the decisions we have referred to above and upheld a transactional immunity statute. Justice Frankfurter stated that the 1893 transactional immunity statute, 27 Stat. 443, which was enacted in response to *Counselman* and was upheld in Brown v. Walker, "has become part of our constitutional fabric." 350 U.S. at 438, 76 S. Ct. at 506. Finally, one further decision illustrating the Supreme Court's consistent interpretation of *Counselman* and Brown v. Walker is Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L. Ed.2d 249 (1960). The petitioner there argued, as do the appellants here, that the immunity granted was not coextensive with the constitutional privilege it sought to replace. The Court responded, 364 U.S. at 514, 81 S.Ct. at 264:

> The complete answer to this is that in safeguarding him against future federal and state prosecution "for or on account of any transaction, matter or thing concerning which he is compelled" to testify, the statute grants him immunity fully coextensive with the constitutional privilege. Some language in Brown v. Walker, 161 U. S., at 601 [16 S.Ct. 644, at 648], to which petitioner refers, compares immunity statutes to the traditional declarations of amnesty or pardon. But neither in that opinion nor elsewhere is it suggested that immunity statutes, to escape invalidity under the Fifth Amendment, need do more than protect a witness from future prosecutions.

In Reina v. United States, as in the other cases referred to above, the Court based its decision concerning the constitutionality of the immunity statute on the benchmark of full transactional immunity. While many of the decisions state merely that to provide a valid immunity Congress need not "do more than protect a witness from future prosecutions," 364 U.S. at 514, 81 S.Ct. at 264, we believe the inference is clear that Congress must do at least that much. It is illogical, in light of the decisions cited, to argue that the Court has never "held" that transactional immunity is the minimal constitutional requirement and that the assertions to that effect in *Counselman* are mere dicta.

The Government argues that even if prior to the decision in Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S. Ct. 1594, 12 L.Ed.2d 678 (1964), the Supreme Court had established a requirement of transactional immunity, the decision in that case signalled a retreat from the transactional requirement and recognized that the Constitution requires no more than the suppression of compelled testimony and its fruits in criminal proceedings. Thus the Government argues that it may constitutionally commit for contempt a witness who refuses to testify after he has been assured that nothing derived from his testimony will ever be used against him. We do not believe that the Government's interpretation of *Murphy* as having sub silentio overruled *Counselman* is warranted.

*Murphy* was not intended to restrict the fifth amendment's scope. Rather, it extended the fifth amendment's requirement that a defendant's involuntary statements never be used in any manner against him. Prior to *Murphy,* the Supreme Court had refused to rule that the Constitution requires that one jurisdiction exclude incriminating statements which a different jurisdiction had compelled a witness to make. *Murphy* recognized that the constitutional limitations on the powers of the states precluded their granting an "absolute" immunity since no state's immunity statute would bind its sister states or the federal government. The Supreme Court held that even though no statute of New

York or New Jersey could prevent the federal government from making use of testimony compelled by those states, the fifth amendment itself had that effect. The result of this decision was that the states could supplant the constitutional privilege and compel incriminating testimony even though the immunity which replaced the constitutional privilege was only a use-restriction immunity so far as jurisdictions other than the questioning sovereign were concerned. That the Court did not reach the question of the extent of the immunity which the questioning jurisdiction must grant [9] is shown by the Court's statement, 378 U. S. at 54, 84 S.Ct. at 1596, of the question before it:

[W]e must now decide the fundamental constitutional question of whether, *absent an immunity provision,* one jurisdiction in our federal structure may compel a witness to give testimony which might incriminate him under the laws of another jurisdiction. (Emphasis added.) [10]

The Court's answer to the question was that one jurisdiction may immunize a witness under its own laws and compel him to give self-incriminating testimony, but that the fifth amendment bars use of that testimony by any other jurisdiction.

In reaching its conclusion, the Court carefully avoided language which would conflict with *Counselman's* requirement that under the fifth amendment the questioning jurisdiction must grant transactional immunity. Thus the Court quoted from and relied on Adams v. Maryland, *supra,* stating, 378 U.S. at 76, 84 S.Ct. at 1608, that language in that case suggests that:

[A]ny testimony elicited under threat of contempt by a government to whom the constitutional privilege against self-incrimination is applicable * * * may not constitutionally be admitted into evidence against him in any criminal trial conducted by a government to whom the privilege is also applicable.[11]

Further, the Court's conclusion in *Murphy,* 378 U.S. at 79, 84 S.Ct. at 1609, avoids any comment on the scope of the immunity the questioning jurisdiction must grant:

[W]e hold the constitutional rule to be that a *state witness* may not be compelled to give testimony which may be incriminating *under federal law* unless the compelled testimony and its fruits cannot be used in any manner *by federal officials* in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, *the Federal Government* must be prohibited from making any such use of compelled testimony and its fruits. This *exclusionary* rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the *Federal Government* in substantially the same position as if the witness had claimed his privilege in the absence of *a state grant of immunity.* (Emphasis added, footnote omitted.)

We do not believe that *Murphy* in any way restricts or limits the *Counselman* requirement that the federal govern-

---

9. In fact, the immunity granted by the states of New York and New Jersey was complete transactional immunity under the laws of those states.

10. We understand the italicized language, "absent an immunity provision," to mean "absent an immunity provision binding on jurisdictions other than the one seeking to compel the incriminating testimony."

11. We believe that this statement from *Murphy* must be interpreted to mean that testimony compelled by *one* government may not be used by *another* government to whom the privilege applies. That is, the Court there considered only the problem presented by an immunity grant in a dual sovereignty situation.

ment must grant full transactional immunity before it can compel a witness to testify on pain of commitment for contempt.

Our conclusion that *Murphy* did not overrule *Counselman* sub silentio is amply supported by subsequent Supreme Court decisions. The opinion of the Court in Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), striking down a federal statute providing only a limited use immunity, based its decision on *Counselman* which it said had "held 'that no (immunity) statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege * * *.' " 382 U.S. at 80, 86 S.Ct. at 199. In Stevens v. Marks, 383 U.S. 234, 244–245, 86 S.Ct. 788, 794, 15 L.Ed.2d 724 (1966), the Court stated:

> We need not stop to determine whether the immunity said to be conferred here—which merely prevents the use of the defendant's testimony or its fruits in any subsequent prosecution but, apparently, does not preclude prosecution based on "independent" evidence * * *—constitutes that "absolute immunity against further prosecution" about which the Court spoke in Counselman v. Hitchcock, 142 U.S. 547, 586, [12 S.Ct. 195, 35 L.Ed. 1110], and which the Court said was necessary if the privilege were to be constitutionally supplanted. And see Albertson v. Subversive Activities Control Board, 382 U.S. 70, 79–81, [86 S.Ct. 194, 15 L.Ed.2d 165].

Both of the decisions above assumed that *Counselman* remained in force and neither cited Murphy v. Waterfront Comm'n. Since the Supreme Court has assumed that *Counselman* was not overruled by *Murphy,* we are unwilling to anticipate the Supreme Court and rule that the *Murphy* opinion had that effect.

■ On the basis of the foregoing analysis, we believe that *Counselman* announced a constitutional requirement that, if the federal government seeks to compel a witness to testify, it must grant him full transactional immunity from prosecution under its laws. We further believe that the Supreme Court has consistently adhered to this view and Murphy v. Waterfront Comm'n did not depart from it. We recognize that it is within our power to disregard a decision of the Supreme Court which has never been expressly overruled if we are convinced that it has been undermined or repudiated by subsequent decisions of the Court. The Court of Appeals for the Ninth Circuit in Stewart v. United States, 440 F.2d 954 (9th Cir.), cert. granted, sub nom. Kastigar v. United States, 402 U.S. 971, 91 S.Ct. 1668, 29 L.Ed.2d 135, (1971), concluded that *Murphy* did repudiate *Counselman* and adopted the view expressed by Mr. Justice White in a concurring opinion in *Murphy,* 378 U.S. at 106, 84 S.Ct. at 1618:

> In my view it is possible for a federal prosecution to be based on untainted evidence after a grant of federal immunity in exchange for testimony in a federal criminal investigation.

■■ We do not concur in the Ninth Circuit's reading of *Murphy.* Since we believe that *Counselman* has not been overruled, sub silentio or otherwise, we are bound to reverse these judgments of contempt.[12] Even if we regarded this

---

12. In the words of Judge Motley in In re Grand Jury Testimony of Kinoy, 326 F. Supp. 407, 419 (S.D.N.Y.1971), with which we fully agree:

> Since the Supreme Court has not overruled its requirement that as between the questioning sovereign and the witness only an immunity statute granting transactional immunity is suffi-

ciently broad to replace the constitutional privilege, this court is without power to do so. Upholding the constitutionality of Title II of the Organized Crime Control Act of 1970 would represent a reversal of long established precedent. Clearly, any such major extirpation of a part of our "constitutional fabric", in addition to being de-

an open question, we believe that the language of the fifth amendment requires that any jurisdiction which seeks to compel a witness to testify grant full transactional immunity [13] and that Congress is powerless under the Constitution to detract from that requirement by legislation.

The judgments are reversed.

creed by the Congress, must be affirmed by the Supreme Court before this court is asked to do so.

13. Mr. Justice Brennan has expressed a similar view in his dissent from the dismissal of certiorari in Piccirillo v. New York, 400 U.S. 548, 562, 91 S.Ct. 520, 527, 27 L.Ed.2d 596 (1971):

I believe that the Fifth Amendment's privilege against self-incrimination requires that any jurisdiction that compels a man to incriminate himself grant him absolute immunity under its laws from prosecution for any transaction revealed in that testimony.