**UNITED STATES ex rel. Stephen J. B., Petitioner,**

**v.**

**Joseph A. SHELLY, Chief Probation Officer Probation Department, Supreme Court, 2d Judicial Department, Kings County, New York, Respondent.**

**No. 69–C–304.**

United States District Court
E. D. New York.

July 16, 1969.

**56**

William Cahn, Dist. Atty. of Nassau County, Mineola, N. Y., for respondent.

James J. McDonough, Attorney-in-Charge, Legal Aid Society of Nassau County, Criminal Div., Mineola, N. Y., for petitioner, Matthew Muraskin, Mineola, N. Y., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Petitioner was convicted of being a Youthful Offender by the Nassau County Court on November 1, 1969. The conviction—his first—was obtained upon a plea of guilty after the trial judge had determined, in a hearing held pursuant to People v. Huntley, 15 N.Y. 2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), that certain statements and confessions made by the relator were admissible against him.

On appeal the conviction was unanimously affirmed by the Appellate Division. The New York Court of Appeals also unanimously affirmed with a full opinion. People v. Stephen J. B., 23 N.Y.2d 611, 298 N.Y.S.2d 489, 246 N.E.2d 344 (1969).

Now on probation, petitioner seeks to overturn his conviction on the ground that the confessions, obtained when he was sixteen and in the absence of a parent or counsel, were utilized to coerce his plea in violation of the United States Constitution. State remedies have been exhausted (28 U.S.C. § 2254; United States ex rel. Kemp v. Pate, 359 F.2d 749 (7th Cir. 1966)) and petitioner remains "in custody." 28 U.S.C. § 2241; Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285, (1963) (parole); see also Nash v. Purdy, 283 F.Supp. 837 (M.D.Fla. 1968); Foster v. Gilbert, 264 F.Supp. 209 (S.D.Fla.1967). Cf. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). For the reasons stated below, the writ of habeas corpus must be granted.

The facts surrounding the arrest and statements are summarized in the opinion of the New York Court of Appeals, and are set forth here in a close paraphrase of that decision. People v. Stephen J. B., 23 N.Y.2d 611, 298 N.Y.S.2d 489, 491, 246 N.E.2d 344 (1969). The events of the evening before, as set out below, were related upon sentencing, and are apparently undisputed.

Petitioner, 16 years old at the time, a teen-age friend, and his friend's parents attended a wedding. The boys drank. While driving them home, the parents became annoyed when the petitioner became ill, and put the boys out of the car, leaving them stranded several miles from home. The two took a stranger's car and apparently wandered about. At approximately 6:00 A.M. the next morning, while the car was being driven by the petitioner's friend, they were stopped by a patrolman for making an illegal turn. Both youths attempted to escape when asked for the registration of the vehicle. The patrolman radioed for assistance, and then apprehended petitioner in the backyard of a nearby home. Petitioner was forcibly returned to the patrol car, and advised that he was entitled to an attorney and had the right not to make any state-

ments. He was not informed, however, that, if indigent, a lawyer would be appointed to represent him or that any statement he might make could be used against him. The patrolman then asked if the car was stolen and petitioner admitted that it was. Shortly thereafter a police sergeant arrived in response to a radio call for assistance. Without giving the fourfold *Miranda* warnings, the sergeant asked petitioner why he had run away from the car. Petitioner replied that he believed the vehicle was stolen. The sergeant then fully advised petitioner of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner stated that he waived his rights and would voluntarily answer questions. He then identified the driver of the car and confessed that they had stolen the car the night before. After unsuccessfully touring the area with the police in an attempt to identify the place from which the car was stolen, defendant was taken to the police station. There he was readvised of his constitutional rights, and he then prepared a written confession in his own handwriting. He was released at 10:00 A.M.

Questioning elicited four statements and took less than four hours, including time spent in trying to determine where the car had been stolen. Petitioner's parents were not informed of the arrest; it is not clear from the record whether he was told that he could call home, but we assume that he was afforded this opportunity. Although there were apparently no threats or brutality, petitioner was observed by the sergeant to be crying. That officer stated that in the stationhouse petitioner looked "like he hadn't received enough sleep and his clothes looked like he had slept in them."

Although a "voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings against him," (United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2d Cir.

1965)), no waiver of constitutional claims arising under the self-incrimination or right to counsel clauses of the federal Constitution may be presumed from a guilty plea in New York. As a result of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the New York courts have established a procedure for testing the admissibility of confessions before the judge outside the presence of the jury; the decision of the judge on this issue may be appealed even after a plea of guilty. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965); N.Y. Code of Criminal Procedure § 813–g. As is the case with pretrial motions to suppress illegally seized evidence under section 813–c of the New York Code of Criminal Procedure (upon which the *Huntley* proceeding is patterned), it

"would be anomalous if a defendant by scrupulously following a sanctioned and reasonable state procedure for preserving his federal constitutional claims on appeal in the state courts, simultaneously waived his right to present these same claims to a federal court in an application for habeas corpus because he was lulled into following state procedure." United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 215 (2d Cir. 1967).

Thus, a conviction upon a plea of guilty, which in turn is based upon an involuntary confession, is invalid in New York. No separate determination of the voluntariness of the plea in a federal habeas corpus proceeding is required since no waiver of constitutional rights may be implied from the plea.

This result accords with common sense and good judicial administration. In the overwhelming majority of cases, as in this case, once a confession is declared admissible, the pressure on the defendant to plead guilty becomes almost overwhelming. The issue of coercion of a plea of guilt is not—as a matter of practicable factfinding judicial capability—separable from the issue of illegality

of the underlying confession under such circumstances.

In passing upon petitioner's contentions, the New York courts determined that his confessions given after appropriate warnings were "voluntary" even though those statements made before full *Miranda* warnings were given were suppressed. People v. Stephen J. B., 23 N.Y.2d 611, 298 N.Y.S.2d 489, 492–93, 246 N.E.2d 344 (1969). But in considering the "voluntariness" of the confessions the state courts failed to give adequate weight to a fundamental aspect of the *Miranda* equation.

■ Not only must a confession be voluntary, but the waiver of the rights protected by *Miranda* must be voluntary. It must, for example, be found that the defendant knowingly and willingly waived his rights to silence and counsel. The question left unanswered by the New York courts is whether, under the circumstances of this case, the petitioner knowingly and willingly waived his rights to silence and counsel under *Miranda*. Since the state courts have not passed upon this issue, this Court must independently apply the appropriate federal law. 28 U.S.C. § 2254(d)(1); Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963); United States ex rel. Kemp v. Pate, 359 F.2d 749 (7th Cir. 1966); Schmear v. Gagnon, 276 F.Supp. 4, 6 (W.D.Wis.1967), *rev'd on other grounds*, 396 F.2d 786 (7th Cir. 1968).

■ A voluntary relinquishment of a constitutional right requires some understanding of what is being relinquished and of the consequences of waiver. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (right to counsel; "an intentional relinquishment or abandonment of a known right or privilege"); *see also* Boykin v. Alabama, 395 U.S. 238, 243, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) (plea of guilty; "utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and

of its consequence."); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1968) (same).

Maturity is obviously a factor in assessing understanding, whether a confession (Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); Gilbert v. Beto, 274 F.Supp. 847 (S.D. Tex.1967)) or *Miranda* rights are involved. *See* West v. United States, 399 F.2d 467, 469 (5th Cir. 1968). While In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), has not made a relinquishment of constitutional rights by a juvenile in the absence of parents or adult friends impossible, it teaches us to be cautious in finding a meaningful waiver by a lone child. Cf. Story v. State, 452 P.2d 822, 825 (Okla.1969) ("questionable that a 17 year old boy of sub-normal education could intelligently comprehend the effect of his waiver after the inadequate warning given herein in the absence of either a parent, guardian, or an attorney.").

■ The ability to reason clearly, free of overwhelming and unbalancing surrounding circumstances, is also a factor in deciding voluntariness. Garrity v. New Jersey, 385 U.S. 493, 498, 87 S.Ct. 616, 619, 17 L.Ed.2d 562 (1967); In Re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967) ("not the product of ignorance * * * or of adolescent * * * fright or despair"); Stevens v. Marks, 383 U.S. 234, 243, 86 S.Ct. 788, 793, 15 L.Ed.2d 724 (1966); United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508, 516 (E.D.N.Y.1967); United States v. Morales, 233 F.Supp. 160, 170 (D.Mont. 1964). It is clear that the petitioner was frightened and tired; uncontradicted testimony of the police sergeant shows that he broke down and cried at some period during the questioning. Because of his age, he could not have had much education. *Cf.* United States ex rel. Johnson v. Rundle, 286 F.Supp. 765 (E.D.Pa.1968). The petitioner, apparently, was neither sophisticated nor experienced in his dealings with the police; he had no previous criminal

record. *Cf*. United States ex rel. Smith v. New Jersey, 323 F.2d 146 (3d Cir. 1963); Roberts v. Beto, 245 F.Supp. 235, 239 (S.D.Tex.1965).

In the statements suppressed by the trial court, the relator admitted that he had been riding in a car which he knew, or at least believed, to be stolen. With these admissions, he had established all the necessary elements of a felony under the then-existing laws of New York. Penal Law of 1909, § 1293–a; Penal Law § 5.05(3), effective Sept. 1, 1967; In Re Anonymous, 26 A.D.2d 673, 272 N.Y.S.2d 399 (2d Dep't 1966); People v. Cordero, 18 Misc.2d 430, 189 N.Y.S.2d 559 (N.Y.C. Magistrate's Court 1959). The petitioner had, in effect, "let the cat out of the bag." United States v. Bayer, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947). In this instance, where relator had exhibited his consciousness of guilt by fleeing when asked for the registration of the car, it cannot be said that "no psychological disadvantage flowed from that [prior admission]." United States v. Knight, 395 F.2d 971, 975 (2d Cir. 1968).

The situation was much like those where the Supreme Court has struck down confessions obtained after earlier coerced statements. Westover v. United States, 384 U.S. 436, 484–96, 86 S.Ct. 1602, 1638–39, 16 L.Ed.2d 694 (1966); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968). Here, there was "no break in the stream of events" between damning admissions before the warnings and more amplified admissions given after. Clewis v. Texas, *supra* at 710 and 1340. As was stated by Mr. Justice Harlan:

"A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition. If a first confession is not shown to be voluntary, I do not think a later confession that is merely a direct product of the earlier one should be held to be voluntary. It would be neither conducive to good police work, nor fair to a suspect, to allow the erroneous impression that he has nothing to lose to play the major role in a defendant's decision to speak a second or third time." Darwin v. Connecticut, 391 U.S. 346, 350–51, 88 S.Ct. 1488, 1490, 20 L.Ed.2d 630 (1968) (concurring and dissenting).

█ This analysis of the criteria used in judging voluntariness of a subsequent confession is, *a fortiori*, applicable in determining the voluntariness of a waiver of the right to counsel. While a suspect might be clever enough to realize that in expanding upon a prior statement he might seriously injure his defense, it would take a most sophisticated individual to realize that his attorney might be able to do something for him after he has clearly admitted the elements of a felony. As was pointed out by the dissent in In Re Groban, 352 U.S. 330, 344, 77 S.Ct. 510, 519, 1 L.Ed.2d 376 (1957) and reiterated in Escobedo v. Illinois, 378 U.S. 478, 487–88, 84 S.Ct. 1758, 1763, 12 L.Ed.2d 977 (1965) and United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1931–32, 18 L.Ed.2d 1149 (1967):

"The right to use counsel at the formal trial is a very hollow thing when for all practical purposes, the conviction is already assured by pretrial examination."

█ The more extended questioning by the sergeant came immediately upon the warnings that he gave petitioner, which, in turn, came immediately upon petitioner's statement that he believed the car in which he was riding to have been stolen. The main aid an attorney might have given to petitioner was to tell him that the first warnings were ineffective, that his earlier admissions could not be used, and that he had better remain silent. It is not conceivable that petitioner understood he was foregoing such important advice when he said he "waived" his right to counsel. Where a child is involved, a period to compose himself and to obtain the assistance of a mature adviser must be granted if

there is to be any assurance that he knowingly waived vital constitutional rights after he has made an admission which cannot be used against him.

In view of the circumstances presented in this case—a tired, frightened, 16-year old boy never before in any trouble with authority, who had admitted the commission of a felony, and who within seconds thereafter, still in the absence of parents or mature friends, reiterated his statements after proper warnings—it is impossible to conclude that the waivers of the rights to silence and to counsel were either knowing or voluntary. The writ of habeas corpus is granted.

So ordered.