Jacob Lutsky, J.
This is a motion to suppress the alleged possession of a dangerous weapon and for a Huntley hearing with respect to a statement allegedly made by the defendant Lester Grant.
A hearing was held at which the arresting officer was the only witness to testify.
The court makes the following findings of fact.
Detective Butler, riding with his partner in an unmarked car, observed three youths on the corner of Nostrand Avenue and Lexington Avenue, Brooklyn, New York. He saw one of the youths approach and wave at a moving taxicab proceeding towards Quincy Street and Nostrand Avenue where the cab stopped for a red light. The other two youths, one of whom was the defendant, ran along the sidewalk in the same direction, also waving their hands. Before the first youth reached the taxi, the light changed and the taxi proceeded to drive away. The two youths had started to leave the sidewalk but returned thereto when the cab drove away.
At no time did any of the youths speak to the operator of the vehicle, nor was there any evidence that he was aware of their existence at any time.
Detective Butler then stopped the three youths and identified himself as a police officer.
One of the youths, other than the defendant, then made a motion with his hand while turning away from Detective Butler who thereupon frisked that person and found a gun on him.
At this point he arrested the youth with the gun and the other youth for attempted robbery of the cab and possession of the gun. He did not place the defendant under arrest for this alleged incident, but stated he had another complaint against *72 the defendant for which he was the subject of an investigation, and had him come to the precinct.
Detective Butler specifically stated he was not arresting the defendant for this alleged attempted robbery and gun possession, but was merely questioning him as to other criminal activities. However, at no time did he ever question the defendant as to "other criminal activities.” His questioning was directed solely as to the crimes herein stated.
Detective Butler did advise the defendant, a 16-year-old youth, at the station house of his Miranda rights and then questioned him solely on the crime of attempted robbery herein. The defendant’s mother was present at the precinct, and Detective Butler stated that although he was aware of her presence, he did not allow her to be present during the questioning as he was not legally obligated to do so.
Detective Butler then left the defendant for some time, and when he returned, he advised the defendant his statement was not the same as that which the other two youths gave him.
Whereupon, he again gave the defendant his Miranda warnings and obtained another statement from the defendant which was substantially similar to the other two youths’ statement as recited to the defendant by Detective Butler. While the defendant had been in police custody all this time, he was now formally advised of his arrest for the crimes alleged in the indictment herein.
Detective Butler also testified that at no time was the defendant in possession of a gun, knife, or any other weapon.
The primary question that arises concerns the justification of Detective Butler’s stopping of the defendant.
The arresting officer stated that he observed one youth run towards a taxi while waving his hands; at the same time two others were running on the sidewalk in the same direction waving their hands as well. The defendant was one of the youths running on the sidewalk.
The stopping of a person must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.” (Terry v Ohio, 392 US 1, 21.)
"Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has *73 been seized within the meaning of the Fourth Amendment.” (People v Cantor, 36 NY2d 106, 111.)
Weighing the evidence herein, this court finds that the facts fall short of the standards for reasonable suspicion and probable cause as set forth in Brinegar v United States (338 US 160) and Smith v United States (358 F2d 833, cert den 386 US 1008). Good faith and bare suspicion is not enough (People v Brown, 32 NY2d 172; People v Corrado, 22 NY2d 308; People v Brown, 24 NY2d 421; Henry v United States, 361 US 98).
On the record before me, I find that the initial stop of the defendant to have been unjustified (Terry v Ohio, supra; People v Cantor, supra).
The mere running towards a cab with waving hands is not sufficient to raise the arresting officer’s hunch to the level of reasonable suspicion. "Absent an articulable foundation for the entrenchment upon individual liberty and privacy * * * police suspicions remain merely 'hunches’ and are not reasonable” (People v Johnson, 30 NY2d 929, 930) within CPL 140.50 (People v Tinsley, 48 AD2d 779).
A hunch or conclusion based on good faith may not be the basis for intrusion into a citizen’s right to be free of illegal search and seizure (Terry v Ohio, supra; People v Whetstone, 47 AD2d 995).
It is well settled that to sustain an arrest or seizure there must be more than mere suspicion.
It is important to note that there is no evidence that the taxi driver was aware of the presence of these youths, let alone any intention to stop him.
"Where the observed acts of the defendant were susceptible of various innocent interpretations * * * where the behavior was at most equivocal and suspicious, and where there was no-supplementation by any additional behavior raising the level of inference from suspicion to probable cause * * * (People v Russell, 34 NY2d 261, 264; People v Brown, 33 NY2d 172, 174; People v Brown, 24 NY2d 421, 423; People v Corrado, 22 NY2d 308, 311, 313)” (People v Davis, 36 NY2d 280, 282), more must be shown to have stopped this defendant (see, also, People v Esposito, 37 NY2d 156, and People v Oden, 36 NY 382). Although a defendant’s conduct may be unusual, it is not sufficient to be deemed criminal behavior or sufficient basis for a finding of probable cause (People v Lakin, 21 AD2d 902).
In addition, there is no evidence that the defendant at *74 tempted to flee when the officer approached (cf. People v White, 16 NY2d 270; People v Vassallo, 46 AD2d 781).
Accordingly, the unlawful stopping of this defendant and taking him into custody has unveiled the question of whether or not there has been an initial tainting of the defendant’s subsequent statements to the arresting officer.
As hereinafter discussed, it is noted at this time that the arresting officer never questioned the defendant regarding the incident for which he took the defendant into custody.
The issue now confronting this court is whether the defendant’s statement was the result of a violation of his constitutional rights.
The question of alleged illegal police action and its effect on the admissibility of information obtained has been reviewed by the Supreme Court of the United States in the Silverthorne-Nardone-Wong Sun trilogy (Silverthorne Lbr. Co. v United States, 251 US 385; Nardone v United States, 308 US 338; Wong Sun v United States, 171 US 471), which cases developed the doctrine known as "fruit of the poisonous tree.”
"The gist of the question being whether, granting the primary illegality, the evidence to which objection is made has been discovered by exploitation of that illegality or, instead, by means sufficiently distinguishable to be free of the primary taint — whether the connection between the primary illegality and the evidence in question is so 'attenuated’ as to dissipate the taint.” (People v Mendez, 28 NY2d 94, 97, cert den 404 US 911; see, also, People v Scharfstein, 52 Misc 2d 976.)
"We need not hold that all evidence is 'fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint’.” (Wong Sun v United States, supra, pp 487-488; emphasis supplied.)
"The problem, of course, is to decide upon any given set of facts what amounts to sufficient attenuation.” (People v Mendez, supra, p 98.)
The facts herein’ reveal that the defendant Grant was observed with the two other youths by the arresting officer, but was not placed under arrest when the two others were at *75 the scene of the alleged crimes. The arresting officer brought Grant to the Police Station only for questioning on an unrelated matter. The record is clear that at no time in the precinct did the arresting officer commence questioning Grant regarding this other matter. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed ‘arrests’ or ‘investigatory detentions’.” (Davis v Mississippi, 394 US 721, 726-727.) It is clear from the record that the arresting officer did not arrest or take the defendant into custody for the crime of attempted robbery; he took him into custody to question him as to another matter.
Here, we have a 16-year-old youth with no prior criminal record being confronted by the police in light of the arrest of his two companions.
"An incriminating statement is not deemed to be volunteered or spontaneous if it is the product of some compelling influence, e.g., a statement by the arresting officer to the defendant which immediately and directly stimulates, provokes or prompts the incriminating remark.” (People v Baez, NYLJ, Oct 24, 1974, p 17, col 7.)
The determinative test herein is the intent of the arresting officer. Certainly, the record is devoid of any reference by the arresting officer to this other incident. It appears from the record that the arresting officer’s main interest in this was to question him regarding the alleged attempted robbery of the cab. This is substantiated by the arresting officer’s questioning of the defendant and then his follow-up questioning of the defendant on this case after his questioning of the other two youths. The arresting officer certainly demonstrated his objectives so that his actions can be deemed a compelling influence on this youth.
An analogy can be shown by the "investigatory detention” in the case at bar and the recent United States Supreme Court case of Brown v Illinois (422 US 590, 603-604, decided June 26, 1975), where it was stated: "The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see Johnson v. Louisiana, 406 U.S. 356, 365 (1972), and particularly, the purpose and flagrancy of *76 the official misconduct are all relevant. See Wong Sun v. United States, 371 U.S. at 491. The voluntariness of the statement is a threshold requirement.”
Moreover, the Supreme Court stated (pp 601-602): "Thus, even if the statements in this case were found to be voluntary-under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.’ 371 U.S. at 486. Wong Sun thus mandates consideration of a statement’s admissibility in light of the distinct policies and interests of the Fourth Amendment.”
"If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See Davis v. Mississippi, 394 U.S. 721, 726-727 (1969).”
On the other hand, in line with the Silverthorne-NardoneWong Sun reasoning, "the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence.” (People v Fitzpatrick, 32 NY2d 499, 506, and cases cited therein.)
"In other words, as one commentator put it, the inevitable discovery factor 'permits the government to remove the taint from otherwise poisoned fruit by establishing that the unlawful act from which it resulted was not a sine qua non of its discovery’ (Maguire, How to Unpoison the Fruit, 55 J. Crim. L.C. & P.S. 307, 313.)” (People v Fitzpatrick, supra, pp 506-507.)
The conduct of the arresting officer by placing the defendant’s companions under arrest at the scene of the alleged incident and his merely taking the defendant to the precinct negates any possibility that the defendant’s statement would have resulted in any event. There is no basis of any independent source whatsoever.
Although parental permission and presence has been held *77 to be irrelevant to the admissibility of a confession (People v Ruppert, 29 NY2d 519), it is a factor that is important under the facts herein.
The record reveals that the defendant’s mother was present at the time of the questioning, but was not allowed to sit with her son, a 16-year-old youth with no prior conflict with the law and certainly no experience with police procedure and tactics.
United States ex rel J.B. v Shelly (305 F Supp 55) involved the confession by a 16-year-old youth. Although our Court of Appeals upheld the admission by the youth (People v Stephen J. B., 23 NY2d 611), the Federal Court of Appeals (430 F2d 215) affirmed the Federal District Court in declaring the confession inadmissible.
The District Court noted that the defendant was 16 years old, not in the presence of his parents or friends, had never been involved in any criminal procedures before, and the fact that because of his age, he could not have had much education (see, also, People v Vaughn, NYLJ, Aug 27, 1975, p 9, col 3).
"Where a child is involved, a period to compose himself and to obtain the assistance of a mature adviser must be granted if there is to be any assurance that he knowingly waived vital constitutional rights”. (United States ex rel J.B. v Shelly, supra, pp 59-60.)
Accordingly, this is an element to be considered in the voluntariness of the defendant’s statements.
As previously stated, it is apparent that the arresting officer exerted a compelling influence over the judgment of this defendant.
Based upon the totality of the circumstances of this case, this court finds that the initial stopping of this defendant and his detention created a primary taint that was exploited to induce the defendant’s subsequent statement, and the court further finds that there was no evidence adduced to sufficiently dissipate that primary illegality. This case has established a clear-cut nexus between the primary illegality and the subject matter of this motion.
Accordingly, the defendant’s motions to suppress the statement and gun are hereby granted.