OPINION OF THE COURT
Leon Deutsch, J.
The juvenile delinquency petition before this court alleges that the respondent, Jimmy T., approximately one month prior to his 16th birthday, committed an act which, if done by an adult, would constitute the crime of manslaughter in the second degree.
The respondent, alleging to be aggrieved by improper inter *624 rogation, moved for an order suppressing a statement made by him on the ground that such statement was not lawfully made and that he did not voluntarily, knowingly, and intelligently waive his constitutional and Miranda rights. A Huntley hearing was held and concluded, to determine whether the petitioner met his burden of proof beyond a reasonable doubt, as required, and that the statement and alleged waiver of rights were voluntarily and lawfully made.
To set the stage for our discussion and determination, a brief general outline of the proof leading to the statement of the respondent, offered into evidence by the petitioner, will be helpful. (We will, in due course, flesh out the proof more fully in our discussion of facts and law, and make specific findings. All findings of fact herein are beyond a reasonable doubt.)
The respondent was arrested at his home one morning by two officers of the New York City Housing Police. This arrest was for an unrelated robbery charge, not the subject of this petition, and occurred a little over one month past his 16th birthday. He was taken to the housing police precinct, and given Miranda warnings. It appears that after being questioned on the robbery for which he was arrested, there was some questioning about other crimes in the area including the homicide charge which is the subject of the petition before the court. No statement of any kind was taken with respect to the homicide. Later that morning, the respondent was taken to the 84th Precinct (New York City Police Department) for booking on the robbery charge. At the 84th Precinct, a statement was taken from the respondent with respect to the instant manslaughter charge, after Miranda rights were given to him and responsive waivers received. It is this statement, which the petitioner seeks to offer into evidence, and which the respondent seeks to suppress.
The issue is whether a statement with respect to a crime charged in a juvenile delinquency petition pursuant to article 7 of the Family Court Act, may be taken from a minor person, 16 years of age, who was under 16 years of age at the time the alleged act was committed, and who does not have a parent present to receive the Miranda rights together with the minor. (The respondent argues that the implied requirements of section 724 of the Family Court Act were violated by the taking of a statement from him in the absence of a parent.)
It should be said at once, and I so hold, that there is nothing in section 724 of the Family Court Act which requires *625 one over the age of 16 when questioned about an act constituting a crime committed when under the age of 16, to have a parent present. Section 724 of the Family Court Act is cross referenced to sections 722 and 723 of the Family Court Act. Section 723 of the Family Court Act is cross referenced to section 722 of the Family Court Act. All these sections refer to and are applicable to persons under the age of 16 who are taken into custody. Recently, Judge Miller of this court, in Matter of Hector C. (95 Misc 2d 255, 257) noted that section 724 of the Family Court Act is applicable to persons under the age of 16 who are taken into custody. In that case, she held that a 15-year-old juvenile had been properly interrogated, despite the fact that the requirements of section 724 of the Family Court Act had not been complied with due to the juvenile’s own misrepresentation as to his age. The Court of Appeals, in People v Stephen J. B. (23 NY2d 611, 616), although reversed by the United States District Court on other grounds which I shall hereinafter discuss, correctly observed in a footnote: "Section 724 of the Family Court Act requires that the parents of a child under 16 years be advised of his arrest, but by its express terms does not apply to defendant who was over 16 years of age at the time of his arrest.”
The statutory language of section 724 of the Family Court Act is straightforward. It applies only to persons less than 16 years of age who are taken into custody. To read it any other way would be an infringement upon the power of the Legislature to make law.
It is clear, then, that the respondent was a minor person over the age of 16 at the time of custodial interrogation. We will, therefore, look to the applicable case law, indeed, the same case law offered up by the respondent. Before we do, and in order to assit in the determination of the issue, some review of the circumstances surrounding the absence or presence of the mother is in order.
It appears that the police officer suspected the respondent of this homicide prior to his 16th birthdate. The police officer, in August or September of 1978, advised the mother of his suspicions and invited her down with the respondent to discuss the matter. This is not controverted by the mother, who testified at the hearing.
On the morning of October 11, 1978, the police officer went to respondent’s residence, and in the presence of the mother, who admitted the officer to the apartment, arrested the re *626 spondent on a robbery charge not before this court. The respondent was taken to the office of the Housing Police Department where Miranda rights were read to him and certain questions were put to him. The mother testified that she left her house some 20 minutes later and went to the Housing Police Precinct, a short distance from her residence. The police officer testified that the mother was present while he questioned the respondent at the Housing Precinct for at least part of the questioning, although he concedes that she arrived after he had begun the questioning. The mother claims that she was at the Housing Precinct, but did not see the respondent until after the questioning. The police officer testified that there were some questions put to the respondent relative to the Gales homicide at the Housing Precinct. After he had completed his questioning of the respondent on the robbery, he "kept going” in his interrogation. There was no separate set of Miranda rights given at the Housing Precinct for the specific purpose of the Gales homicide. He had, however, given him his Miranda rights prior to the interrogation on the robbery for which he had been arrested.
It is clear that the mother was not present at the commencement of the interrogation, nor at the giving of the Miranda rights to the respondent. It is equally clear from her own testimony that she enjoyed unrestricted access to him at the Housing Precinct after the interrogation. It is also clear, again from her testimony, that she found him essentially not crying, not distraught, not fearful, not maltreated. She also acknowledged that he was not compelled to make any statement.
Respondent, by way of counsel’s argument, contends that the police intentionally excluded the mother from the room where the interrogation was taking place at the Housing Police Precinct in order to deprive the respondent of his mother’s assistance. There is no competent proof that this is so. The mother testified that some other police officer told her that she could not go into the interrogation room. This, of course, would have been inadmissible hearsay. It was offered by the respondent, and so received into evidence, solely for the purpose of showing the mother’s alleged state of mind, and not for the truth thereof. Officer Taylor had testified that she was not excluded, and was, in fact, present for part of the questioning.
In addition to the lack of competent proof to show an *627 alleged exclusion, I find even her alleged and implied state of mind to be seriously in doubt. It is quite simply belied by the totality of her conduct, before, during and after the respondent’s questioning.
The mother was present at her home at the time of the arrest. She did not ask the police to wait for her. She did not suggest that they all go to the precinct together. She did not tell the police she wanted to be present at any questioning. She did not indicate that her son would be frightened to go there without her. There is no evidence that her son was in tears or distraught or frightened. There is no hint that he required parental aid or other comfort.
As previously stated, the mother had unrestricted access to her son after the questioning at the Housing Precinct. Her testimony that she did not discuss the interrogation with her son afterward is extraordinary in the circumstances. This would probably be so in any circumstance. Here, however, there was the additional factor that she already knew, from this very officer, that her son was a suspect in the Gales homicide. Either it means that she is absolutely incredible, or it means that she had absolute confidence in her son’s ability to take care of himself vis-a-vis the police. Certainly, it cannot mean that she is neglectful or uncaring. She did, after all, go to the Housing Precinct, and testified here in his behalf.
It is certain that the mother chose not to go to the 84th Precinct. This takes on additional significance when considered in the light of her prior knowledge of the police wanting to talk to her son about the homicide, and the fair and reasonable inference that she talked with her son when she was with him at the Housing Precinct after the interrogation.
Further, there is nothing in the evidence from her or anyone else that she was excluded from, or told that she could not go to, the 84th Precinct. The housing officer’s opinion that she would not have been allowed at the booking is only his opinion. It is of no significance whatever. It certainly does not establish that she was prevented from going there, or even told not to do so. Indeed, the mother herself makes no such claim in her testimony.
It should be noted, too, that the respondent presumably had a night’s sleep, and there is absolutely no evidence of any rough handling by the police. In fact, respondent was offered and given food at the 84th Precinct.
At the outset, it must be observed that the courts have *628 refused to announce a per se rule that a minor may not waive his rights in response to Miranda warnings.
In United States ex rel. Stephen J. B. v Shelly (430 F2d 215, 218, affg 305 F Supp 55) the court held that a 16-year-old boy did not effectively waive his Miranda rights, stating: "We are not constrained to hold that there is a per se rule barring all waivers by minors; but in the circumstances of this case Stephen’s age was made all the more crucial by attendant factors that heightened the likelihood that his waiver was other than intelligent and voluntary, and which make it virtually impossible for the state to satisfy the 'heavy burden’ imposed upon it by Miranda.” The "attendant factors” relied on by the court in Stephen J. B. (305 F Supp, supra, 55, 60) were articulated by the United States District Court as follows: "In view of the circumstances presented in this case — a tired, frightened 16-year old boy never before in any trouble with authority, who had admitted the commission of a felony, and who within seconds thereafter, still in the absence of parents or mature friends, reiterated his statements after proper warnings — it is impossible to conclude that the waivers of the rights to silence and to counsel were either knowing or voluntary.” In Stephen J. B. (supra), the facts showed that the defendant had been awake the whole night before the confession was made, that his parents were never informed of the arrest, that he was treated somewhat roughly by the police, and that he broke down and cried at some point during the questioning. The court found that, taken together, the "overwhelming and unbalancing surrounding circumstances” of this case impaired defendant’s ability to reason clearly; thereby, disabling him from making a knowing and intelligent waiver of his Miranda rights. (305 F Supp, at p 58.)
It is readily apparent that the facts and circumstances of our case, as above recounted, are completely and significantly different from Stephen J. B. (supra).
Moreover, in Stephen J. B. (supra) defendant had made prior admissions which were improperly secured. In the instant matter, there are no prior inadmissible statements which would affect the voluntariness and propriety of respondent’s statement taken at the 84th Precinct. Nor are any of the circumstantial factors cited in Stephen J. B. (supra) applicable herein. We have here no frightened, tired boy who needed time to compose himself, nor one who needed, wanted or was deprived of mother.
*629 Nor, is the holding in People v Bevilacqua (45 NY2d 508), also cited by respondent, applicable. There, the Court of Appeals held that wholesale impropriety by the police required suppression of an oral confession by an 18-year-old youth. In that case, the police ignored defendant’s requests to notify his mother, and his whereabouts was concealed from his lawyer.
Here, there is no impropriety, no trickery, no deceit, no subterfuge, no compulsion, no concealment.
I find that the mother here was informed, that she was not deliberately excluded, that at all times she knew where her son was, and that she and her son both freely and deliberately chose not to have the mother present at the 84th Precinct where respondent later made a statement.
Thus, I find that there are not here present attendant factors of a sinister or insidious nature respecting the mother’s absence, nor other unbalancing circumstances which bespeak the mother’s exclusion, or the respondent’s deprivation, or any other impropriety on the part of the police.
I restate that there is no requirement in law to exclude per se a statement of a minor person over the age of 16.
I hold that a statement taken from a minor person over the age of 16 when he is questioned in the absence of a parent, and who was a juvenile under the age of 16 when the alleged act constituting a crime was committed, is admissible in evidence, if the statement is lawfully and properly taken and if his waiver of Miranda rights is found to be intelligent, knowing, and voluntary.
Accordingly, and upon all the facts and circumstances of this particular case, I find beyond a reasonable doubt that the fundamental rights of the respondent have not in any sense or manner been violated, that the statement he made was without taint, voluntary and on his own initiated offer, that he was properly advised of his constitutional rights, and that he, thereafter, exercised a valid waiver of those rights.
The respondent’s motion to suppress is hereby denied.
[Portions of opinion omitted for purposes of publication.]