Matter of Manuel B. (2004 NY Slip Op 24292)

Matter of Manuel B.

2004 NY Slip Op 24292 [4 Misc 3d 722]

August 5, 2004

Family Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 29, 2004

[*1]
In the Matter of Manuel B., a Person Alleged to be a Juvenile Delinquent, Respondent.
Family Court, Queens County, August 5, 2004

APPEARANCES OF COUNSEL

Legal Aid Society, Jamaica (Oscar Finkel of counsel), for respondent. Michael A. Cordozo, Corporation Counsel, Jamaica (Jennifer Gilroy of counsel), for presentment agency.

{**4 Misc 3d at 723} OPINION OF THE COURT

Stephen J. Bogacz, J.
In May 1979, the Kings County Family Court considered what was then a case of first impression. The police had arrested a 16-year-old youth and questioned him about acts he had allegedly committed before his 16th birthday. During this custodial interrogation, the police did not follow the set of procedural safeguards then embodied in article 7 of the Family Court Act. The trial court (Deutsch, J.) upheld the police questioning and denied the respondent's motion to suppress his ensuing inculpatory statement. (Matter of Jimmy T., 99 Misc 2d 623 [Fam Ct, Kings County 1979].) In so ruling, the court reasoned that the protections of Family Court Act § 724 were available only to youths who were under the age of 16 at the time of the police questioning.[FN1] 

Since Jimmy T. had turned 16 years [*2]old prior to his interrogation, he was an adult under the prescribed protocol. The fact that the questioning related back to acts of alleged juvenile delinquency that would be charged in the Family Court because he was under the age of 16 at the time of the commission of the alleged acts did not alter this fact. He was considered to be an adult when the police questioned him.
Now, a quarter of a century later, this court must assess the continued viability of that holding in the context of the case before it. The respondent, who was 16 years of age when the police arrested him for alleged acts of juvenile delinquency committed prior to his 16th birthday, seeks to suppress two statements that he made to a police detective, one orally and one in writing. The respondent also challenges the voluntariness of a subsequent videotaped oral statement to an assistant district attorney. The respondent urges the court to suppress all three statements {**4 Misc 3d at 724}based upon, inter alia, the fact that the police failed to follow similar safeguards now mandated by Family Court Act § 305.2.
The court conducted a lengthy pretrial Huntley hearing in this matter, at which a police officer and police detective testified for the presentment agency. The respondent offered no evidence. Preliminarily, the court had the unique opportunity to observe the demeanor and to assess the credibility of the two witnesses who testified. The court fully credits the testimony of each witness. On this threshold issue, the court makes the following findings of fact beyond a reasonable doubt.
On October 5, 2002, a patrol supervisor directed the testifying police officer to the respondent's home to investigate a complaint against him. The police officer arrested the respondent and then transported him and his mother to the 103rd Police Precinct. During this conveyance, neither the officer nor his partner engaged the respondent in any conversation. Upon arrival at the precinct, the officer searched the respondent, removed the handcuffs that were used during the transport, and placed him in a temporary holding cell. The officer directed the respondent's mother to a nearby seat, and proceeded to take what is colloquially known as "pedigree information" (name, address, age, school, etc.) from the respondent in the holding cell. After approximately one hour, the officer then brought the respondent to an interview room in the precinct's detective squad offices.
The testifying detective then took charge of the respondent in the interview room, after the testifying officer had advised him of the basis for the arrest. The respondent's mother was not present in the interview room. The detective did not invite her into the interview room and made no attempts to contact the respondent's father. He also did not utilize the precinct's designated juvenile room for this questioning because the respondent was 16 years of age, and he was "going to interview him as an adult." Although the detective believed that the acts about which he questioned the respondent took place after the respondent had turned 16 years of age, this was factually untrue; they allegedly occurred when the respondent was 15 years old.
From these findings of fact, the court renders the following conclusions of law. This court's analysis must necessarily begin with the applicable statutory section, Family Court Act § 305.2. By its plain language, this section provides mandatory procedural{**4 Misc 3d at 725} direction to the police when they take a person under the age of 16 into custody. (Family Ct Act § 305.2 [2].) The police must immediately notify a parent or person legally responsible for the youth that they have taken him/her into custody. (Family Ct Act § 305.2 [3].) The statute further provides that the police shall not interrogate a juvenile in custody without first administering the Miranda warnings to him/her and the person(s) so notified, if actually present. (Family Ct Act § 305.2 [7].)
[*3]In analyzing Family Court Act § 305.2, the court must employ the rules of statutory construction. Legislative intent is first to be found from a literal reading of the statute itself, so long as its language is clear and unambiguous. (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b].) Additionally, in construing the section at issue, the court must also presume that the Legislature intended to enact that which it enacted, and intended to omit that which it omitted. (McKinney's Cons Laws of NY, Book 1, Statutes § 74.) Applying these precepts of statutory construction to the case at bar leads to the inexorable conclusion that the provisions of Family Court Act § 305.2 pertain only to the interrogation of persons who are under the age of 16 at the time of that questioning.
The court has also reviewed an analogous statutory provision, Criminal Procedure Law § 140.20 (6), for possible guidance in the absence of any case law on point subsequent to Jimmy T. (supra). That section mandates that when the police arrest a "juvenile offender"[FN2] 

they must immediately notify a parent or person legally responsible for the youth or the person with whom s/he is domiciled that s/he has been arrested. The police must further notify that individual of the location of the facility where the juvenile offender is being detained. Once again, unfortunately, the statute is silent with respect to what, if any, notification is required when the police arrest an alleged juvenile offender after his/her 16th birthday. Indeed, no specific age is even stated in the subdivision at issue, unlike Family Court Act § 305.2.
The minimal appellate case law that has been generated under this section of the Criminal Procedure Law also fails to provide any {**4 Misc 3d at 726}definitive guidance on this issue. At first blush, three short appellate decisions appear to possibly address this issue, People v Crosby (105 AD2d 844 [2d Dept 1984]), People v Vazquez (234 AD2d 572 [2d Dept 1996]), and People v Johnson (244 AD2d 573 [2d Dept 1997]). Although each of these cases tantalizingly suggests that since the defendant was over the age of 16 at the time of the questioning the statutory parental notification requirements were not applicable, none of the holdings specifically identifies the defendant as a juvenile offender. Unfortunately, further research into the briefs and transcripts underlying each case reveals that all defendants were over the age of 16 for all relevant purposes and were neither arrested nor charged as juvenile offenders.
The Court of Appeals decision in People v Salaam (83 NY2d 51 [1993]) does provide some limited analogous guidance. In this case, a police detainee held himself out to be 16 years of age when arrested by the police for a crime allegedly committed that same day, and reasonably appeared to be so. While the police were questioning him, his mother arrived at the precinct, and was initially denied access to her son. It was only after she informed the police that her son was really only 15 years old, and he verified this fact, that the police ceased questioning him, and permitted him to meet with his mother. The Court of Appeals upheld this police conduct in preventing the mother from seeing the detainee when she first arrived, because the police "reasonably believed that they were dealing with an adult and, therefore, were lawfully questioning him alone" (at 56 [emphasis supplied]). Applying this analysis to the case at bar suggests that a police detainee over the age of 16 may be regarded [*4]as an adult for all purposes, including the inapplicability of Family Court Act § 305.2.[FN3]

This court must therefore essentially rely upon its own interpretation of Family Court Act § 305.2, as informed by the analysis of the precedent statute in Jimmy T. (supra), the rules of statutory {**4 Misc 3d at 727}construction and the limited analogous case law. In so doing, this court must compare the plain language of each relevant statute and consider the legislative and philosophical changes that have occurred in the juvenile justice system over the last quarter century.[FN4]

This process leads to only one conclusion. The court reaffirms the continued viability of both the holding and the analysis of Jimmy T. (supra) in this, the first decade of the 21st century. It is not simply that 25 years have passed. Even after consideration of the profound statutory changes and the fundamental modifications in daily practice that have taken place since that time, the analysis of Jimmy T. remains jurisprudentially sound. The result therefore remains the same. Wherefore, this court denies the respondent's motion to suppress all statements upon this ground.

Footnotes

Footnote 1: The controlling statute in 1979, Family Court Act § 724, defined the duties of a peace officer after taking a juvenile into custody, or having a youth delivered to his/her custody by a private person. S/he was required to immediately notify the parent or other person legally responsible for his/her care, or the person with whom s/he is domiciled, that s/he has been taken into custody.
As acknowledged by the court in Matter of Jimmy T., Family Court Act § 724 cross-referenced to Family Court Act §§ 723 and 722. The court (at 625) also recognized that "[a]ll these sections refer to and are applicable to persons under the age of 16 who are taken into custody." (Emphasis supplied.) The court went on to add that "[t]he Court of Appeals, in People v Stephen J.B. (23 NY2d 611, 616) . . . correctly observed in a footnote: '[s]ection 724 of the Family Court Act requires that the parents of a child under 16 years be advised of his arrest, but by its express terms does not apply to defendant who was over 16 years of age at the time of his arrest.' " 

Footnote 2: A juvenile offender is a person at least 14 years of age (or at least 13 years of age if arrested for second degree murder) and not yet 16 years of age who is arrested for the alleged commission of one or more of certain very serious felonies, defined in the Criminal Procedure Law and Penal Law. Such juvenile offenders are liable for prosecution in the adult criminal justice system. (See CPL 1.20 [42]; Penal Law § 10.00 [18]; § 30.00 [2].)

Footnote 3: The court additionally acknowledges that under certain circumstances, a calculated police strategy to isolate a detainee over the age of 16 from his/her family after s/he expresses a desire for such contact implicates that detainee's potential access to an attorney and therefore is impermissible. (People v Kern, 75 NY2d 638 [1990]; People v Bevilacqua, 45 NY2d 508 [1978]; People v Townsend, 33 NY2d 37 [1973].) Factually, however, this authority clearly does not apply to the case at bar. No such calculated strategy was revealed at the pretrial Huntley hearing. The respondent's mother was present at the precinct, albeit not in the same room, and he made no request or demand to speak with her, either prior to or during the interrogation at issue.

Footnote 4: New York's juvenile justice system has undergone fundamental change in the last 25 years. It has become increasingly adversarial and formal in its procedure. For example, pretrial suppression hearings, commonplace in today's delinquency practice, were rarely conducted in 1979. Comprehensive pretrial discovery has replaced its rudimentary predecessor. Indeed, the State Legislature enacted a new juvenile delinquency code in 1983, now embodied in article 3 of the Family Court Act. Despite such significant changes, however, there is simply no additional case law guidanceon either the trial or appellate levelon facts that are essentially identical to Jimmy T. to inform this court's decision on this issue.